**GOOD | GUSTAFSON | AUMAIS LLP**
CHRISTOPHER T. AUMAIS, SBN 249901
CHRISTOPHER B. GOOD, SBN 232722
RYAN GUSTAFSON, SBN 220802
2330 Westwood Boulevard, Suite 103
Los Angeles, California 90064
Telephone: (310) 274-4663
E-mail: cta@ggallp.com
E-mail: cbg@ggallp.com
E-mail: jrg@ggallp.com

**THE KEETON FIRM LLC**
Steffan T. Keeton (*Pro hac vice forthcoming*)
100 S Commons, Ste. 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com
*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISON

| | |
|---|---|
| John Forrett, individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>West Thomas Partners, LLC d/b/a GFB,<br><br>Defendant. | CASE NO.  5:22-cv-02048-NC<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff John Forrett ("Plaintiff") brings this action, individually and on behalf of all others similarly situated, against Defendant West Thomas Partners, LLC d/b/a GFB ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

GOOD GUSTAFSON AUMAIS LLP

## NATURE OF THE ACTION

1. This case arises out of Defendant's deceptive, misleading, unfair, and unlawful practices with respect to its marketing and sale of its GFB Gluten Free Bites which are sold in a variety of flavors (collectively, the "Product" or "Products").[1]

2. Defendant manufactures and sells its Products throughout the United States in a variety of physical and e-commerce stores.

3. Defendant's marketing stresses the importance of protein consumption, the health benefits of its Products, and the high-protein nature of its Products.

4. Notably, all Products are labeled as "PROTEIN PACKED" despite not being high in protein.

5. Moreover, in violation of California law and federal regulations, Defendant attempts to perpetuate this deception by prominently making protein claims on the Principal Display Panel and the back of the packaging while also omitting the Percent Daily Value for protein in the Nutrition Facts panel on the Products' labels.

6. Plaintiff and other reasonable consumers purchased the Products believing that they were accurately represented. Specifically, Plaintiff and reasonable consumers believed that the Products contained accurate label information and representations. Plaintiff and other reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

7. Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a California Class, a Multi-State Consumer Class, and a Nationwide Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all

---

[1] At the time of this filing, the following GFB Bites products are included in this definition: Dark Chocolate Coconut, Dark Chocolate Peanut Butter, Coconut Cashew Crunch, Chocolate Cherry Almond, Dark Chocolate Almond, and Peanut Butter. This definition is not exhaustive, and shall include all of Defendant's products that are similarly deceptively marketed.

benefits Defendant has enjoyed from its unlawful, unfair, and deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful, unfair, and deceptive conduct in the labeling and marketing of the Products.

## **PARTIES**

8.      Plaintiff is a citizen of California, who purchased the Products during the class period, as described herein. Plaintiff's claim is typical of all Class Members in this regard. In addition, the advertising and labeling on the package of the Products purchased by Plaintiff, including the representations, is typical of the advertising and labeling of the Products purchased by members of the Class. In May 2020, Plaintiff purchased Defendant's Dark Chocolate + Peanut Butter Gluten Free Bites at a price of $4.99 per bag from a CVS store located in San Jose, CA. In making his purchase, Plaintiff relied upon Defendant's labeling and advertising claims, namely, the "protein packed" representations and omissions made on the front and back of the Product's packaging.

9.      In purchasing the Products, Plaintiff was exposed to, read, and relied upon Defendant's labeling claims that were intended to appeal to consumers interested in protein-focused products. To the best of his recollection, Plaintiff read and relied on Defendant's labeling representations including "protein packed," and the Products did not have a percentage of the Daily Recommended Value ("DRV") listed for protein.

10.      These statements and omissions led Plaintiff to believe that consuming the Products would provide an excellent source of protein.

11.      Defendant is a Michigan company with its principal place of business in Grand Rapids, Michigan. Defendant produces, markets and distributes its consumer food products in retail stores across the United States including stores physically located in the State of California and in this district.

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to many locations within this District and hundreds of retail locations throughout the State of California, where the Products are purchased by hundreds of consumers every day.

14.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

15.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

1

**DIVISIONAL ASSIGNMENT**

2    16.    Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events

3  giving rise to the claims arose in Santa Clara County, and this action should be

4  assigned to the San Jose Division.

5

6

**FACTUAL ALLEGATIONS**

7    **A.**    **Defendant Manufactures, Labels, and Advertises the Products**

8    17.    Defendant manufactures, labels, and advertises the GFB Gluten Free

9  Bites Products.

10    18.    Defendant markets and labels the Products with the representations as

11  described herein. While the following example shows the Dark Chocolate + Peanut

12  Butter flavor, all of the Products contain the same representations concerning

13  protein. Specifically, all Products contain: (1) protein content claims on the front and

14  back of each Products' labels, (2) the claim that each product is "PROTEIN

15  PACKED," and (3) the omission of the Percent Daily Value for protein in the

16  Nutrition Facts panel.

17    19.    The following images display the front label, the back label, and an

18  enlarged Nutrition Facts panel from the back label:

19

20

21

22

23

24

25

26

27

28

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26






27        20.     On the front label, as shown above, the Defendant prominently

28   represents that the product is "PROTEIN PACKED."

RIDICULOUSLY TASTY. PROTEIN PACKED.

21.  On the rear label, as shown above, the Defendant prominently represents that the product is "Protein-packed" in two locations.



22.  In the Nutrition Facts panel, as shown above, the Defendant notably omits the Percent Daily Value for protein.

**B. Defendant Violates Identical Federal and State Regulations**

**a. Federal and State Regulations are Identical**

23.  The FDA oversees the regulation and labeling of food pursuant to the Federal Food, Drug and Cosmetic Act ("FDCA").

24.  California's Sherman Food, Drug and Cosmetic Law, Cal. Heath & Saf. Code § 110765 et seq. (the "Sherman Law"), incorporates all food labeling regulations promulgated by the FDA under the FDCA. *See e.g.*, Cal. Heath & Saf. Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."), § 110380 and § 110505.

**b. Regulations Governing the Labeling of Food Products**

25.  21 U.S.C. § 343 addresses misbranded food and states that a "food shall be deemed to be misbranded – (a) If (1) its labeling is false or misleading in any particular, or (2) in the case of a food to which section 350 of this title applies, its

GOOD GUSTAFSON AUMAIS LLP

advertising is false or misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title." *See* 21 U.S.C. § 343(a).

26.     All Products contain 4 to 5 grams of protein per serving.

27.     All Products make nutrient content claims concerning protein content.

28.     Reasonable consumers, including Plaintiff, believe that the term "PROTEIN PACKED" means that the products are "high" in protein or constitute an "excellent source" of protein.

29.     This consumer belief is consistent with FDA regulations that provide a benchmark for the ability to claim that a food product is "high," "rich in," or "excellent source of" a particular nutrient. *See* 21 C.F.R. § 101.54; 21 C.F.R. § 101.9(c)(7)(iii).

30.     To make a claim that a food is "high" in protein, the foods must meet a certain level of Reference Daily Intake (RDI) or Daily Reference Value (DRV). For example, 21 C.F.R. § 101.54 requires that the "food contains 20 percent or more of the RDI or the DRV per reference amount customarily consumed." For protein, the FDA has established that the RDI or DRV for adults and children over 4 years old is 50 grams.[2] 21 C.F.R. § 101.9(c)(7)(iii).

31.     Generally, a manufacturer is not required to include the DRV for protein. However, when a product's label makes a nutrient content claim related to protein content, the manufacturer is required to include the DRV.[3]

32.     The Products fail to include the Percent Daily Value for protein.

33.     At most, the Products contain only 50% of the protein content required to substantiate high protein claims.[4]

---

[2] This amount represents proteins that have 100% protein quality values. *See* 21 C.F.R. § 101.9(g)(7).

[3] 21 C.F.R. § 101.9(c)(7) and *see Guidance for Industry: A Food Labeling Guide*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf at N22 ("The percent of the DRV is required if a protein claim is made for the product or if the product is represented or purported to be for use by infants or children under 4 years of age.") (last visited March 20, 2022).

[4] Because Defendant fails to include the DRV, it is impossible to know the quality of the protein contained within the Products. As a result, *if* Defendant accurately represents that the Products contain 4 to 5 grams of protein, then the Products would contain 8-10% of the DRV *at best* assuming arguendo that the protein used therein

– 8 –

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

34.     Protein *quantity* by itself does not tell the full story from a human nutritional standpoint. A protein's *quality* is also critical because, as explained below, humans cannot fully digest or utilize some proteins. As the FDA has stated in published guidance: "Information on protein quantity alone can be misleading on foods that are of low protein quality" as a result, "nutrition labeling must allow consumers to readily identify foods with particularly low quality protein to prevent them from being misled by information on only the amount of protein present." 58 Fed. Reg. 2079 at 2101-2. 21.

35.     Protein is not a monolithic substance, but instead comes in many varieties. Proteins are chains of different amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein that is ingested changes the function of the protein in the body, and certain types of proteins are more easily digested and used by humans than others.

36.     All of a human body's proteins are formed through the process of protein synthesis. That is, although humans consume dietary proteins, human bodies digest those proteins, break them down into their constituent amino acids, and then use those amino acids to synthesize the human proteins necessary for life, tissue repair, and other functions. Of the twenty total amino acids, humans can produce only eleven of them on their own. Humans cannot produce, under any circumstances, nine of the amino acids required for protein synthesis. These nine amino acids are called the "essential amino acids" and they must be supplied through the diet.

37.     All nine essential amino acids are necessary for protein synthesis to take place. Lacking even one essential amino acid will prevent protein synthesis from occurring, and the rest of the proteins will degrade into waste. Accordingly, once the body uses up the limiting essential amino acid from a protein source, the remainder of that protein becomes useless to human protein synthesis and has little nutritional

contains 100% protein quality.

value. High-quality proteins, therefore, are those that contain all nine essential amino acids because they have a greater effect on protein synthesis and are fully digestible.

38.    A protein source's digestibility also affects the amount of useable protein a person receives from consuming it. Many plant-based proteins are only 85% digestible, meaning 15% of the protein from that source will simply pass through the body without ever being absorbed at all.

39.    As the FDA has stated in official guidance, "Accurate methods for determining protein quality are necessary because different food protein sources are not equivalent in their ability to support growth and body protein maintenance." 56 Fed. Reg. 60366, § B. The Protein Digestibility Corrected Amino Acid Score ("PDCAAS") is the FDA mandated measure of protein quality, and it accounts for both the amino acid profile and the digestibility of the protein. 21 C.F.R. § 101.9(c)(7)(ii). The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then multiply that number by humans' ability to digest the amino acid profile.

40.    Defendant uses plant-based proteins in its products. Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is important. Whey protein is animal-based and contains all nine essential amino acids. It has a high biological value and is fully digestible by humans. Thus, whey protein has a PDCAAS of 1.0. Plant protein contains higher levels of antioxidants, but rarely contains all nine essential amino acids. Further, plant proteins such as peanut and rice proteins, which Defendant uses in its Products according to their ingredient lists, are not fully digested by humans.

41.    Peanut proteins typically have a PDCAAS of .5, meaning only 50% of the protein from those sources will be digested and bioavailable to humans.

42.    Brown rice proteins typically have a PDCAAS of .6, meaning only 60% of the protein from those sources will be digested and bioavailable to humans.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

43.     Pea proteins typically have a PDCAAS of .86, meaning only 86% of the protein from those sources will be digested and bioavailable to humans.

44.      Accordingly, Defendant's use of low-quality proteins means that it actually provides far less protein to humans than the Product labels claim, or that amino acid content testing without correcting for digestibility shows.

45.     By artfully omitting the DRV for protein, the Defendant is able to mislead and deceive consumers that the Products are excellent sources of protein.

46.     Because Defendant implements unfair, deceptive, misleading, unlawful, and fraudulent practices with its Products, it obtains an unfair competitive advantage which stifles competition in the marketplace.

47.     For example, this competing product from Whole Foods makes protein representations throughout its product, is composed of plant-based proteins that are incomplete. In contrast with Defendant's Products, Whole Foods presents an accurate DRV for protein.




48. Despite containing only deficient amounts of protein, consumers are misled by Defendant's marketing, labeling, and advertising to believe that the Products are high in protein.

   **c.  The Products Are Misbranded Under the Regulations Governing the Labeling of Food Products**

49. The marketing of the Products as "PROTEIN PACKED" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that high protein claims are material to consumers.

50. As described herein, the Products contain deficient amounts of protein to justify these claims.

51. Thus, the Products' labels are false and misleading, and therefore the Products are misbranded.

52. To be clear, Plaintiff does not allege any claims pursuant to the FDCA and Sherman Law and relies on these regulations only to the extent they provide a predicate basis for liability under state and common law, as set forth herein.

**C. Plaintiff and Consumers Purchased the Products to Their Detriment**

53. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

54. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

55. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products represented to be high in protein over comparable products not so represented.

56.     As an immediate, direct, and proximate result of Defendant's false, misleading, unfair, and deceptive representations and omissions, Defendant injured the Plaintiff and the Class Members in that they:

   a.  Paid a sum of money for Products that were not what Defendant represented;

   b.  Paid a premium price for Products that were not what Defendant represented;

   c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

   d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

57.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

58.     Plaintiff and the Class Members paid for Products that were high in protein but received Products that were not high in protein. The products Plaintiff and the Class Members received were worth less than the Products for which they paid.

59.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products that are not represented as high in protein.

60.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

1   Consequently, Plaintiff and the Class Members have suffered injury in fact and lost

2   money as a result of Defendant's wrongful conduct.

3   **FACTS COMMON TO ALL CAUSES OF ACTION**

4   61.     Consumers are focused on increasing the amount of protein in their

5   diets. This increased demand indicates that consumers are willing to pay a premium

6   for products labeled and marketed as high protein.[5]

7   62.     Defendant's Products are manufactured, distributed, and marketed by

8   Defendant and sold in drug, grocery, and other online and brick-and-mortar retail

9   stores nationwide.

10  63.     Based on the language that appears on each product, Plaintiff

11  reasonably believed that Products were high in protein.

12  64.     The phrase "PROTEIN PACKED" is a representation to a reasonable

13  consumer that Defendant's Products are high in protein. The phrase is misleading to

14  a reasonable consumer because Defendant's Products are not high in protein.

15  65.     Defendant knows (and knew) that consumers will pay more for a product

16  marketed as high protein, and intended to deceive Plaintiff and putative Class

17  Members by labeling and marketing its Products as purportedly high-protein

18  products.

19  **CLASS DEFINITIONS AND ALLEGATIONS**

20  66.     Plaintiff, pursuant to Federal Rule of Civil Procedure 23, bring this

21  action on behalf of the following classes:

22      a.   California Class: All persons who purchased Defendant's Products

23           within the State of California and within the applicable statute of

24           limitations;

25

26

27  _____

[5] *See* Brooks, Robert & Simpson, S.J. & Raubenheimer, David. (2010*). The price of
28  protein: Combining evolutionary and economic analysis to understand excessive
    energy consumption.* Obesity Reviews : an official journal of the International
    Association for the Study of Obesity. 11. 887-94. 10.1111/j.1467-789X.2010.00733.x.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

b. Multi-State Consumer Class: All persons in the States of California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[6]

c. Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period (collectively, the "Class," "Classes," and "Class Members").

67.    Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Class, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

68.    The members of the Class are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

69.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

---

[6] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

a. whether Defendant misrepresented material facts concerning the Products on the label of every product;

b. whether Defendant omitted material facts concerning the Products on the label of every product;

c. whether Defendant's conduct was unfair, misleading, and/or deceptive;

d. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the classes;

e. whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f. whether Defendant breached express warranties to Plaintiff and the classes;

g. whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

70.     Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the high protein representations and Plaintiff sustained damages from Defendant's wrongful conduct.

71.     Plaintiff will fairly and adequately protect the interests of the classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

72.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate

GOOD GUSTAFSON AUMAIS LLP

their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

73.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

74.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## FIRST CLAIM FOR RELIEF

### Violation of State Consumer Protection Statutes
### (On Behalf of the Multi-State Consumer Class)

75.    Plaintiff repeats and realleges each and every allegation above as if set forth herein.

76.    The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

77.     Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

78.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Violations of the Unfair Competition Law ("UCL"),
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

79.     Plaintiff repeats and realleges each and every factual allegation contained in the foregoing paragraphs as if fully set forth herein.

80.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against the Defendant.

81.     Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

82.     Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

83.     Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made materially false representations and omissions.

GOOD GUSTAFSON AUMAIS LLP

84.     As described herein, Defendant made representations that the Products are high in protein when the Products are not high in protein.

85.     Defendant is aware that the representations and omissions they have made about the Products were and continue to be false and misleading.

86.     Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

87.     There were reasonable alternatives available to Defendant to further its legitimate business interests, other than the conduct described herein.

88.     The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

89.     Defendant's labeling and advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, et seq. (Consumer Legal Remedies Act), California Business and Professions Code Section 17500, et seq. (False Advertising Law), Cal. Heath & Saf. Code § 110765 et seq. (the "Sherman Law"), and the common law as described herein.

90.     Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

91.     Defendant knew or should have known of their unlawful conduct.

92.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of the UCL.

GOOD GUSTAFSON AUMAIS LLP

93.     Defendant's conduct in making the representations and omissions described herein constitutes a knowing failure to adopt policies in accordance with and adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct creates an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

94.     In addition, Defendant's conduct was, and continues to be, unfair in that its injury to countless purchasers of the Products is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

95.     Moreover, Plaintiff and members of the California Class could not have reasonably avoided such injury. Defendant's material misrepresentations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations and omissions were untrue and misleading. Plaintiff purchased the Products in reliance on the representations made by Defendant, including that the Products' labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations and omissions.

96.     Plaintiff and members of the California Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and members of the California Class.

97.     As a result of the business acts and practices described above, Plaintiff and members of the California Class, pursuant to § 17203, are entitled to an Order

enjoining such future wrongful conduct on the part of Defendant and such other Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

98.    Pursuant to Civil Code § 3287(a), Plaintiff and the members of the California Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the class members are entitled to interest in an amount according to proof.

**THIRD CLAIM FOR RELIEF**

**Violations of the False Advertising Law ("FAL"),**

**Cal. Bus. & Prof. Code §§ 17500 *et seq*.**

99.    Plaintiff repeats and realleges each and every factual allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against the Defendant.

101.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

102.    Defendant committed acts of false advertising, as defined by §§ 17500, *et seq*., by misrepresenting that the Products were high in protein.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

103.   Defendant knew or should have known through the exercise of reasonable care that its "PROTEIN PACKED" representation and other misrepresentations and omissions for the Products were false, misleading and/or deceptive.

104.   Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived. Consumers, including Plaintiff and members of the California Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiff and members of the California Class, were among the intended targets of such representations.

105.   As a result of Defendant's conduct, Plaintiff and members of the California Class were harmed and suffered actual damages as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not high in protein; (b) they paid a price premium for the Products based on Defendant's misrepresentations and omissions; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised, namely the represented protein content. Additionally, misbranded food products cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded food has no economic value and is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of the purchase price of the misbranded food. Plaintiff and members of the California Class have thus been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold. Defendant has further been unjustly enriched at the expense of Plaintiff and the members of the California Class.

## FOURTH CLAIM FOR RELIEF

### Violations of the Consumer Legal Remedies Act ("CLRA"),

### Cal. Civ. Code §§ 1750 *et seq.*

106.   Plaintiff repeats and realleges each and every factual allegation contained in the foregoing paragraphs as if fully set forth herein.

107.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against the Defendant.

108.   At all times relevant hereto, Plaintiff and members of the California Class were "consumer[s]," as defined in Civil Code section 1761(d).

109.   At all times relevant hereto, Defendant constituted a "person," as defined in Civil Code section 1761(c).

110.   At all times relevant hereto, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

111.   The purchases of the Products by Plaintiff and members of the California Class were and are "transactions" within the meaning of Civil Code section 1761(e).

112.   Defendant disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that the Products were and are high in protein.

113.   Defendant's representations violate the CLRA in at least the following respects:

    a.   In violation of Civil Code § 1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

    b.   In violation of Civil Code § 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, which they are not; and

    c.   In violation of Civil Code § 1770(a)(9), Defendant advertised the Products with an intent not to sell the products as advertised.

GOOD GUSTAFSON AUMAIS LLP

114.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendant of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. Notice was sent via certified mail, return receipt requested on March 22, 2022. As of the date of filing this complaint, Defendant has not responded. Accordingly, if after 30 days no satisfactory response to resolve this litigation on a class-wide basis has been received, Plaintiff will seek leave to amend this request to seek restitution and actual damages as provided by the CLRA.

115.   Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

116.   Defendant knew or should have known that its Products did not contain the claimed characteristics because Defendant manufactured, marketed and sold its Products without those characteristics that it claimed. Defendant knew or should have known that its representations about its products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiff and members of the California Class.

117.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's and California Class Members' rights and was wanton and malicious.

118.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that its Products have characteristics which they do not have.

## FIFTH CLAIM FOR RELIEF

### Breach of Express Warranties

119.   Plaintiff repeats and realleges each and every factual allegation contained in the foregoing paragraphs as if fully set forth herein.

120.   Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

121.   As discussed above, Defendant promised and expressly warranted that the Products contained an excellent source of protein.

122.   Plaintiff and Class Members relied on these representations when purchasing Products.

123.   These promises and affirmations of fact constitute express warranties that became part of the basis of the bargain between Plaintiff, Class Members, and the Defendant.

124.   All conditions precedent to Defendant's liability under the contract, including notice, have been performed by Plaintiff and the Class Members.

125.   Defendant has breached the terms of its express warranties by failing to provide the Products as warranted.

126.   As a result of Defendant's breach of its warranties, Plaintiff and others similarly situated have been damaged in the amount of the purchase price of the Products.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

127.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

128.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against the Defendant.

129.   At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Class.

130.   Plaintiff and members of the Class conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Class, with full

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

131.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

132.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## **RELIEF DEMANDED**

133.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

   a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

   b.   For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

   c.   For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

   d.   For an order requiring Defendant to immediately cease and desist from selling their misbranded Products in violation of law; enjoining

CLASS ACTION COMPLAINT

Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e.   For prejudgment and postjudgment interest on all amounts awarded;

f.   For an order awarding punitive damages; and

g.   For an order awarding attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: September 9, 2022

Respectfully submitted,

By: /s/ Christopher T. Aumais
Christopher T. Aumais  (SBN 249901)
**Good Gustafson Aumais LLP**
2330  Westwood Blvd., No. 103
Los Angeles, California 90064
Telephone: (310) 274-4663
cta@ggallp.com

By: /s/ Steffan T. Keeton
Steffan T. Keeton*
**THE KEETON FIRM LLC**
100 S Commons, Suite 102
Pittsburgh, PA 15212
Telephone: (888) 412-5291
stkeeton@keetonfirm.com
*pro hac vice* to be sought

*Counsel for Plaintiff and the Class*