SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CHRISTOPHER VAN GUNDY, Cal. Bar No. 152359
  cvangundy@sheppardmullin.com
MICHAEL A. LUNDHOLM, Cal Bar No. 336151
  mlundholm@sheppardmullin.com
Four Embarcadero Ctr., 17th Floor
San Francisco, CA 94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

Attorneys for Defendant,
West Thomas Partners, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Forrett, individually, and on behalf of those similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>West Thomas Partners, LLC d/b/a GFB,<br><br>      Defendant. | Case No. 5:22-cv-02048-NC<br><br>**DEFENDANT WEST THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:    November 2, 2022<br>Time:    1:00 p.m.<br>Courtroom:    5<br><br>The Honorable Nathanael M. Cousins<br><br>Filed: March 30, 2022<br>Summons Served: May 10, 2022 |

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2   PLEASE TAKE NOTICE THAT on November 2, 2022, at 1:00 p.m., in

3   Courtroom 5 of the United States District Court for the Northern District of California,

4   located at 280 South 1st Street, San Jose, CA, 95113, the Honorable Nathanael M.

5   Cousins, Defendant West Thomas Partners, LLC ("West Thomas" or "Defendant")

6   will and hereby does move the Court for an order dismissing, with prejudice, the First

7   Amended Complaint ("FAC") and each claim filed therein by Plaintiff John Forrett

8   ("Plaintiff").

9   West Thomas brings this Motion pursuant to Federal Rules of Civil Procedure

10  12(b)(1) and 12(b)(6) because Plaintiff lacks subject matter jurisdiction, and because

11  Plaintiff has failed to state claims upon which relief can be granted, respectively.

12  The FAC alleges six claims for relief:  (1) violation of California's Consumer Legal

13  Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA"); (2) violation of

14  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et

15  seq; (3) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§

16  17500 et seq; (4) violation of State Consumer Protection Statutes; (5) Breach of

17  Express Warranties; and (6) Unjust Enrichment.  Plaintiff also seeks injunctive relief

18  and to represent a nationwide putative class of consumers.

19  This Motion is based on this Notice of Motion, the accompanying

20  Memorandum of Points and Authorities, the concurrently filed Declaration of Elliott

21  Rader, all pleadings and documents on file in this case, and on such other written and

22  oral argument as may be presented to the Court.

23

24

25

26

27

28

1  | Dated:  September 23, 2022
2  |
3  |                              Respectfully submitted,
4  |                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
5  |
6  |                              By
7  |                                      CHRISTOPHER VAN GUNDY
   |                                      MICHAEL A. LUNDHOLM
8  |
9  |                                      Attorneys for Defendant
   |                                    WEST THOMAS PARTNERS, LLC
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 3

III.   ARGUMENT ................................................................................. 6

    A.    No Reasonable Consumer Would Be Misled By Defendant's "Protein Packed" Claims ........................................................... 7

    B.    Plaintiff Lacks Standing To Sue Under Consumer Protection Statutes Of Other States .......................................................... 12

    C.    Plaintiff's "Protein Packed" Claims Are Impliedly Preempted Because They Seek To Enforce the FDCA ................................... 15

    D.    Plaintiff's Claims About Protein Quality Are Expressly Preempted ............................................................................... 19

    E.    Plaintiff's Claims About The Nutrition Label Fail Because He Did Not Allege Reliance ........................................................... 21

    F.    Plaintiff Has Failed to Plead Fraud With the Requisite Specificity .............................................................................. 22

IV.    CONCLUSION ........................................................................... 24

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

<u>Cases</u>

4

5

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ....................................................................................... 6

6

7

*Becerra v. Dr Pepper/Seven Up, Inc.*
  945 F.3d 1225 (9th Cir. 2019) ...................................................................... 7, 8

8

9

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................ 6

10

11

*Bronson v. Johnson & Johnson, Inc.*
  2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013)................................. 11

12

13

*Brown v. Natures Path Foods, Inc.*
  2022 U.S. Dist. LEXIS 84477 (N.D. Cal. Mar. 10, 2022) ............................20, 21

14

15

*Buckman Co. v. Plaintiffs' Legal Comm.*
  531 U.S. 341 (2001) ...................................................................................... 15

16

*In re Carrier IQ, Inc.*
  78 F. Supp. 3d 1051 (N.D. Cal. 2015)............................................................ 14

17

18

*Chong v. Kind LLC*
  2022 U.S. Dist. LEXIS 27438 (N.D.Cal. Feb. 15, 2022)................ 16, 19, 20, 21

19

20

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*
  911 F.2d 242 (9th Cir. 1990) ......................................................................... 10

21

22

*Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956 (9th Cir. 2018).......................................................................... 22

23

24

*Delacruz v. Cytosport, Inc.*
  2012 U.S. Dist. LEXIS 51094 (N.D. Cal. Apr. 11, 2012)................................. 11

25

26

*Delman v. J. Crew Grp., Inc.*
  2017 U.S. Dist. LEXIS 221646 ........................................................................ 8

27

*Durnford v. MusclePharm Corp.*
  907 F.3d 595 (9th Cir. 2018) ......................................................................... 20

28

*Ebner v. Fresh, Inc.*
   838 F.3d 958 (9th Cir. 2016) ........................................................................ 7, 8

*Edmundson v. P&G*
   537 F. App'x 708 (9th Cir. 2013) ...................................................................... 11

*Fayer v. Vaughn*
   649 F.3d 1061 (9th Cir. 2011) ............................................................................ 6

*In re Glumetza Antitrust Litig.*
   2020 WL 1066934 (N.D. Cal. Mar. 5, 2020) ...................................................... 13

*Goldsmith v. Allergan, Inc.*
   2011 U.S. Dist. LEXIS 6233 (C.D. Cal. Jan. 13, 2011) ..................................... 17

*Hadley v. Kellogg Sales Co.*
   273 F. Supp. 3d 1052 (N.D. Cal. Aug. 10, 2017) ..................................... 6, 9, 10

*Hawkins v. Kroger Co.*
   906 F.3d 763 (9th Cir. 2018) ............................................................................ 20

*Kane v. Chobani, Inc.*
   2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) ............................... 23

*Kane v. Chobani, Inc.*
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) .............................................................. 7

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) .......................................................................... 22

*Krommenhock v. Post Foods, LLC*
   255 F.Supp.3d 938 (N.D. Cal. 2017) .................................................................. 9

*Kwikset Corp. v. Superior Court*
   51 Cal. 4th 310 (Cal. 2011) .............................................................................. 21

*Mercado v. Audi of Am., LLC*
   2019 WL 9051000 (C.D. Cal. Nov. 26, 2019) ................................................... 13

*Mullins v. Premier Nutrition Corp.*
   178 F. Supp. 3d 867 (C.D. Cal. 2016) ............................................................... 12

*Nacarino v. Kashi Co.* (N.D.Cal. Feb. 9, 2022)
   2022 U.S. Dist. LEXIS 23409 ................................................................. 3, 20, 21

*In re Nexus 6P Prods. Liab. Litig.*
    293 F. Supp. 3d 888 (N.D. Cal. 2018).................................................................14

*Oestreicher v. Alienware Corp.*
    544 F. Supp. 2d 964 (N.D. Cal. 2008).................................................................11

*Pardini v. Unilever United States, Inc.*
    961 F. Supp. 2d 1048 (N.D. Cal. 2013)...............................................................21

*Perez v. Nidek Co.*
    711 F.3d 1109 (9th Cir. 2013) .............................................................................15

*Razo v. Ashley Furniture Indus.*
    782 Fed. App'x 632 (9th Cir. 2019) .......................................................................7

*Reid v. Johnson & Johnson*
    780 F.3d 952 (9th Cir. 2015) ...............................................................................20

*Rugg v. Johnson & Johnson*
    2018 U.S. Dist. LEXIS 101727 (N.D. Cal. June 18, 2018) ...................................8

*Salazar v. Honest Tea, Inc.*
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) .................................................................11

*Saul v. United States*
    928 F.2d 829 (9th Cir.1991) ..................................................................................6

*Schertzer v. Bank of Am., N.A.*
    445 F. Supp. 3d 1058 (S.D. Cal. 2020) ...............................................................13

*In re Seagate Tech. LLC Litig.*
    233 F.Supp.3d 776 (N.D. Cal. 2017)...............................................................8, 12

*Senne v. Kansas City Royals Baseball Corp.*
    114 F. Supp. 3d 906 (N.D. Cal. 2015)..................................................................14

*Shaeffer v. Califia Farms, LLC*
    44 Cal.App.5th 1125 (2020).............................................................................7, 21

*Shane v. Fla. Bottling, Inc.*
    2017 U.S. Dist. LEXIS 141069 (C.D. Cal. Aug. 9, 2017) ...................................8

*Somers v. Beiersdorf, Inc.*
    467 F. Supp. 3d 934 (S.D. Cal. 2020) .................................................................17

*Soo v. Lorex Corp.*
    2020 WL 5408117 (N.D. Cal. Sept. 9, 2020).......................................................13

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016)..........................................................................................13

*Stengel v. Medtronic, Inc.*
    704 F.3d 1224 (9th Cir. 2013) .......................................................................15, 16

*Stewart v. Kodiak Cakes, LLC*
    537 F.Supp.3d 1103 (S.D. Cal. 2021) ..........................................2, 9, 10, 13, 14

*Swafford v. Int'l Bus. Machines Corp.*
    383 F. Supp. 3d 916 (N.D. Cal. 2019)...................................................................14

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................23

Statutes

21 U.S.C. § 337(a) ........................................................................................................15

21 U.S.C. § 343-1(a) .....................................................................................................20

California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq............. 5

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq........ 5

CLRA ...................................................................................................7, 8, 9, 21, 22

FAL ......................................................................................................8, 9, 21, 22

False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq .............................. 5

FDCA ..................................................................................2, 15, 16, 17, 19, 20

UCL .........................................................................................................8, 9, 17, 21, 22

Unfair Competition Law ............................................................................................7

Other Authorities

21 C.F.R. § 101.9(c)(7)..............................................................2, 4, 15, 18, 20, 21

21 C.F.R. § 101.9(c)(7)(iii).....................................................................4, 16, 17

21 C.F.R. § 101.54..............................................................................2, 4, 15, 16, 17

21 C.F.R. § 101.54(c)(1)..................................................................................17, 18

Fed. R. Civ. P. Rule 8(a)......................................................................................22

Fed. R. Civ. P. Rule 9(b)..............................................................3, 4, 22, 23, 24

Fed. R. Civ. P. Rule 12(b)(1)...........................................................................6, 19

Fed. R. Civ. P. Rule 12(b)(6)...........................................................................6, 22

Fed. R. Civ. P. Rule 15(a)....................................................................................5

SMRH:4877-3679-0316.5

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    Defendant West Thomas Partners, LLC ("Defendant" or "West Thomas")

3    hereby respectfully submits this memorandum of points and authorities in support of

4    its motion to dismiss the First Amended Complaint ("FAC").

5    # I.    INTRODUCTION

6    In his original Complaint, Plaintiff John Forrett ("Plaintiff") alleged, and

7    makes the exact same allegations in the FAC, that West Thomas' claims of "protein

8    packed" on the front label of its gluten free snack bites ("Gluten Free Bites") with 4

9    or 5 of grams of protein per serving were deceptive under state consumer protection

10   laws.  Plaintiff claims that reasonable consumers uniformly believe that "protein

11   packed" is exactly equivalent to the U.S. Food and Drug Administration's ("FDA")

12   definition of "high" in protein at 10 grams of protein per serving, and so a product

13   with only 4 or 5 grams of protein supposedly renders "protein packed" misleading.

14   Contrary to established case law, Plaintiff's claims in this regard are legally

15   insufficient because it is unreasonable to assume that consumers ignore the front *and*

16   back of the product label that clearly disclose the exact amount of protein in the

17   products, either 4 grams or 5 grams per serving (the latter being a "good" source of

18   protein according to FDA regulations).

19   "Protein packed" thus is defined as 4 or 5 grams per serving on both product

20   labels, along with the servings per package, the gram weight of the product and the

21   calories per serving, so the reasonable consumer can hardly have been deceived as

22   to the meaning of "packed."  The front label in fact declares "4g Plant Protein/110

23   Calories," which informs consumers that the "packing" of protein is in the first

24   instance the amount of protein per 110 calories.  Regardless of exactly how

25   consumers interpret "packed," consumers know the exact amount of protein they are

26   getting and cannot be deceived, as a matter of law.

27   Moreover, the claim of "protein packed" is mere puffery and does not refer to

28   a specific measurement that is actionable.  Whether a food product is "protein

-1-    5:22-cv-02048-NC

packed" is not a function of a specific FDA-mandated gram weight of protein, but could depend on an individual's protein requirements and consumption of the product.  A reasonable consumer for this reason understands that "protein packed" is a marketing term like "ridiculously tasty" next to "protein packed," and does not mean exactly 10 grams or any particular gram weight of protein.

Further, Plaintiff's "protein packed" claims of deception are nothing more than a barely disguised effort to enforce 21 C.F.R. § 101.54 and 21 C.F.R. § 101.9(c)(7) through the name of a false advertising lawsuit.  Plaintiff's claims in this regard originate with FDA regulations related to benchmark protein levels and disclosure of daily recommended value of protein and, as laid out in Plaintiff's FAC, are governed by such regulations as well.  These claims are impliedly preempted because they conflict with Congress's decision not to afford private litigants like Plaintiff a right of action to enforce the FDCA.

Notably, in granting a motion to dismiss on similar claims, a federal court in California found that an identical "protein-packed" statement was ***not*** misleading where the defendant had similarly disclosed on the front of the package the amount of protein per serving (as well as in the Nutrition Facts).  *Stewart v. Kodiak Cakes, LLC,* 537 F.Supp.3d 1103, 1152 (S.D. Cal. 2021).  The court in *Kodiak* rightfully recognized that the average consumer is more than capable of seeing and understanding a large disclosure with the amount of protein per serving on the front of the package.  The Court respectfully should adopt the reasoning in *Kodiak* and dismiss the FAC, now Plaintiff's second pleading attempt, with prejudice for this reason alone.

New in the FAC are Plaintiff's claims that the protein disclosures on the Gluten Free Bites are misleading and deceptive because plant proteins allegedly are low-quality and not as digestible, and, thus, consumers believe they are getting more protein than they actually are.  Multiple courts have dismissed this exact argument as being expressly preempted because the FDA permits protein disclosures to be

calculated using the nitrogen method allegedly used for the front of label protein disclosures here, and do not require the Protein Digestibility Corrected Amino Acid Score ("PDCAAS") score to be used, as argued by Plaintiff.  *See e.g. Nacarino v. Kashi Co.* (N.D.Cal. Feb. 9, 2022) 2022 U.S. Dist. LEXIS 23409, *7-9 (finding preempted theory that "the nitrogen-content method overstates the amount of protein per serving" and that it is "misleading to use a figure…that has not been adjusted for protein digestibility").

Finally, all of Plaintiff's claims sound in fraud but lack the requisite specificity to survive a legal challenge as required by Rule 9(b) of the Federal Rules of Civil Procedure.  There are no allegations, for example, as to why consumers believe "protein packed" means an "excellent" source of protein as defined by FDA, except for Plaintiff's conclusions.  Moreover, for his "low quality protein" claims, Plaintiff wholly fails to plead that he read the Nutrition Facts panel and would not have bought the product had the percent Daily Value for protein been disclosed based on a PDCAAS score as required by regulations (information that supposedly would have "corrected" the alleged overstating of protein on the front label).

For these reasons, Plaintiff's claims all fail as a matter of law.  Plaintiff has already amended his Complaint and has had adequate opportunity to address the various legal issues with his allegations.  As such, the FAC should be dismissed in its entirety without leave to amend.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, a California resident, filed his FAC based on the primary charging allegation that Defendant's Gluten Free Bites misled consumers with the statement "protein packed" on the label.  FAC ¶¶ 1-4.  Plaintiff alleges he purchased Defendant's Dark Chocolate + Peanut Butter Gluten Free Bites at a CVS store in San Jose, California, in May 2020.  *Id.* at ¶ 8.  Defendant manufactures and markets different flavors of Gluten Free Bites.  *Id.* at ¶ 18.

1   Defendant's Gluten Free Bites contain a claim on the front of the package
2   "Ridiculously Tasty. Protein Packed," while on the back the product is further
3   referred to as a "protein-packed craveable snack." *Id*. at ¶ 19.  The front package
4   clearly states in large letters "4G Plant Protein/110 Calories."  *Id*. at ¶ 19 (picture).
5   Further, the Nutrition Facts panel on the back label of the Gluten Free Bites
6   discloses that the product contains 4 grams of protein.  *Id*.  After the image of the
7   product label, Plaintiff further provides in the FAC cropped portions of the label
8   where the "protein packed" claim is displayed divorced from the context of the other
9   label declarations.  *Id*. at ¶ 20-21 (pictures).  These cropped photographs notably do
10  not include the large statement on the front of the package disclosing the amount of
11  protein in the product.  *Id*.

12   Plaintiff alleges that a reasonable consumer believes that the "protein packed"
13  statement means that the products are "high" in protein or constitute an "excellent
14  source" of protein pursuant to the FDA definition under C.F.R. § 101.54 and 21
15  C.F.R. § 101.9(c)(7)(iii).  *Id*. at ¶¶ 28-29.  Plaintiff further alleges that pursuant to
16  the FDA regulations, this benchmark is 10 grams or more per serving for protein.
17  *Id*. at ¶¶ 29-30.  Plaintiff emphasized in his pleading the essential allegation that
18  "protein packed" "is a representation to a reasonable consumer that Defendant's
19  products are high in protein" as defined by FDA.  *Id*. at ¶ 64.  The phrase
20  supposedly is misleading to a reasonable consumer because Defendant's products
21  are not high in protein as defined by FDA regulations.  *Id*.

22   Plaintiff also claims that Defendant failed to provide the daily recommended
23  value declaration of protein on the Nutrition Facts, as required for products making
24  claims related to protein content pursuant to 21 C.F.R. § 101.9(c)(7).  *Id*. at ¶¶ 29-
25  31.  Plaintiff alleges that by "artfully omitting" the daily recommended value of
26  protein in a product containing anything less than 10 grams of protein per serving,
27  Defendant's "protein packed" claim misleads and deceives consumers that its
28  products are excellent sources of protein.  *Id*. at ¶¶ 32-33.  Plaintiff further alleges

1  common to all claims for relief that Defendant "intended to deceive Plaintiff and

2  putative Class Members by labeling and marketing its Products as purportedly high-

3  protein products." *Id*. at ¶ 50.

4         In the FAC, Plaintiff now also alleges that the quantity of protein in the

5  Gluten Free Bites is misleading because not all the protein is digestible and of the

6  same "quality." *Id*. at ¶¶ 34-38.  As such, Plaintiff argues that the PDCAAS score is

7  the method of protein measurement that accounts for the quality and digestibility of

8  the protein. *Id*. at ¶ 39.  Plaintiff specifically takes issue that plant proteins have a

9  lower PDCAAS score and are allegedly "low-quality proteins" because of the

10  PDCAAS score. *Id*. at ¶¶ 40-46.

11         On the basis of these facts, Plaintiff brought the following six claims for relief

12  under state consumer protection laws: (1) violation of California's Consumer Legal

13  Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA"); (2) violation of

14  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et

15  seq; (3) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§

16  17500 et seq; (4) violation of State Consumer Protection Statutes[1]; (5) Breach of

17  Express Warranties; and (6) Unjust Enrichment.  For relief, Plaintiff requests class

18  certification, an order awarding damages, punitive damages and attorneys' fees. *Id*.

19  at ¶ 133.  After a series of stipulations approved by the Court, Defendant's response

20  date to the Complaint was set as August 19, 2022.  After Defendant filed a motion to

21  dismiss, Plaintiff responded by filing the FAC at issue in this Motion; this motion to

22  dismiss the FAC is timely filed fourteen days after service of the FAC.  Fed. R. Civ.

23  P. 15(a).

24

25

---

26  [1] Notably Plaintiff attempts bring suit in states with allegedly "similar consumer
27  protection laws under the facts of this case", noting ten states besides California:
    Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New
28  York, Pennsylvania, Oregon, and Washington.  FAC at ¶ 66, n.6.

# III.   **ARGUMENT**

West Thomas moves for dismissal of the FAC for lack of subject matter jurisdiction and lack of standing under 12(b)(1), and for Plaintiff's failure to state a claim upon which relief can be granted, under Rule 12(b)(6).  Rule 12(b)(1) requires dismissal of claims for which a plaintiff lacks constitutional standing or which are federally preempted.  *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991) (finding that preemption deprives the court of subject matter jurisdiction).  Federal Rule of Civil Procedure ("Rule") 12(b)(6), on the other hand, requires dismissal where a plaintiff fails to state a plausible claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (finding that a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and "enough facts to state a claim to relief that is plausible on its face.").

Plaintiff must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Whether a complaint states a plausible claim requires "the reviewing court to draw on its judicial experience and common sense." *Id*. at 683.  Indeed, "some threshold of plausibility must be crossed at the outset before a [consumer class action] case should be permitted to go into its inevitably costly and protracted discovery phase." *Twombly*, 550 U.S. at 558.

Although the Court on a motion to dismiss must assume all ***facts*** pled by a plaintiff as true, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  In addition, a court may consider on a motion to dismiss documents "whose contents are alleged in a complaint or whose contents are essential to a claim and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1061 (N.D. Cal. Aug. 10, 2017).  Thus, "conclusory allegations of law

1  and unwarranted inferences are insufficient to defeat a motion to dismiss," and "a

2  plaintiff may plead himself out of court" with facts, including those incorporated into

3  the complaint by reference, "which establish that [the plaintiff] cannot prevail on his

4  . . . claim." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014).

5       Under this standard, as set forth below, Plaintiff has not and cannot state any

6  claim for relief because it is not plausible that a reasonable consumer would be

7  misled as Plaintiff claims.  Additionally, or alternatively, the Court lacks subject

8  matter jurisdiction over the action due to federal preemption of Plaintiff's state-law

9  claims.  Lastly, Plaintiff, a California citizen who purchased the product in-state,

10  lacks standing to bring claims under statutes of states outside California.

11  **A.    No Reasonable Consumer Would Be Misled By Defendant's "Protein**

12  **Packed" Claims**

13       Plaintiff's claims under the California consumer-protection statutes pled here

14  are governed by the "reasonable consumer" standard.  *Becerra v. Dr Pepper/Seven*

15  *Up, Inc.,* 945 F.3d 1225, 1228 (9th Cir. 2019).  This means that only those

16  statements that are "'likely' to deceive a 'reasonable consumer' are actionable under

17  the Unfair Competition Law, the false advertising law and the CLRA." *Shaeffer v.*

18  *Califia Farms, LLC,* 44 Cal.App.5th 1125, 1140 (2020).  This test "requires more

19  than a mere possibility that [a product's] label 'might conceivably be misunderstood

20  by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh,*

21  *Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co*.,

22  105 Cal.App.4th 496, 507 (2003)).  Rather, "the reasonable consumer standard

23  requires a probability 'that a significant portion of the general consuming public or

24  of targeted consumers, acting reasonably in the circumstances, could be misled.'"

25  *Id*.

26       The context of the advertising as a whole should be considered when

27  determining whether the statements on the packaging are deceptive or misleading.

28  *Razo v. Ashley Furniture Indus.*, 782 Fed. App'x 632 (9th Cir. 2019) (recognizing

that a defendant's allegedly deceptive representations must be viewed "reasonably and in context" to determine whether the material as a whole is misleading). "Because the 'reasonable consumer' inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement . . . in context, is such that no reasonable consumer could be misled in the manner claimed by the plaintiff." *Rugg v. Johnson & Johnson*, 2018 U.S. Dist. LEXIS 101727, at *9 (N.D. Cal. June 18, 2018); *In re Seagate Tech. LLC Litig.*, 233 F.Supp.3d 776, 794 (N.D. Cal. 2017) (dismissing a claim where "Plaintiffs do not allege that the statements were made in a context that suggests a particular level of verifiable reliability or performance"). A determination of whether any statement is false or misleading requires that the actual statement, not cherry-picked words or phrases, be "read reasonably and in context." *Shane v. Fla. Bottling, Inc.*, 2017 U.S. Dist. LEXIS 141069, at **11-12 (C.D. Cal. Aug. 9, 2017); *Delman v. J. Crew Grp., Inc.*, 2017 U.S. Dist. LEXIS 221646, at *21 ("The question is how a reasonable consumer would interpret the phrase … in the context of the specific commercial interaction that Plaintiff has challenged.").

Where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product in question, dismissal is appropriate. *See, e.g., Becerra*, 945 F.3d at 1229 (affirming dismissal of UCL, FAL, and CLRA claims on motion to dismiss because no reasonable consumer would be misled that the word "diet" in a soft drink's brand name promises weight loss or healthy weight management); *Ebner*, 838 F.3d at 966 (affirming dismissal of UCLA, FAL and CLRA claims where the Court concluded the general public would not be deceived about the volume of the container of the product where, amongst other facts, the label accurately stated the weight).

Perhaps most importantly and most akin to the facts at hand, a federal court in California considered virtually identical "protein-packed" claims and, in accounting for the full package, found that in a strikingly similar context a reasonable consumer

1   would find such claims are **not** misleading.  In *Stewart v. Kodiak Cakes, LLC,*

2   plaintiff claimed defendant used deceptive marketing tactics on its products' label,

3   including the statement "protein-packed."  537 F.Supp.3d 1103, 1152 (S.D. Cal.

4   2021).  Defendant argued that these claims were implausible because the front and

5   back of the package stated the grams of protein per serving on the product.  *Id.* at

6   1152-1153.  The pictures of the product showed that the packaging included both a

7   "protein-packed" statement and the "number of grams of protein in roughly the

8   same large, bold typeface on the front of the box."  *Id.*  Based on this, the Court

9   granted Defendant's motion and dismissed "Plaintiffs' CLRA, FAL, and the

10  fraudulent prong of the UCL causes of action premised on consumer deception

11  through packaging and advertising that contained the statement 'protein-packed.'"

12  *Id.*

13      Here, Plaintiff similarly challenges the exact same label statement that the

14  Gluten Free Bites are "protein packed."  FAC ¶¶ 19-22 (images).  Although Plaintiff

15  does provide a full picture of the label, Plaintiff also provides multiple pictures that

16  crop the image to focus (inappropriately) on only the portions of the label that say

17  "protein packed."  Yet, as the aforementioned case law makes abundantly clear, the

18  context of the *entire* label matters.

19      Despite Plaintiff's attempt to crop the image here and rid the label of its

20  context, the image of the full label makes clear that the front of the label in fact

21  discloses in large font the grams of protein per serving, and that this amount of

22  protein is "packed" into 110 calories.  See Declaration of Elliott Rader ("Rader

23  Decl.") ¶ 3-7; Exhibits A-F.  Similar to *Kodiak,* the "protein packed" claims at issue

24  are made in connection with an explicit claim about a nutrient ("4g Plant Protein")

25  made in large font on the front label.  *See also Hadley,* 243 F.Supp. 3d at 1103

26  (dismissing plaintiff's unlawful prong UCL cause of action with prejudice where

27  "the information concerning the amount of protein originating from milk and cereal

28  is located directly below the allegedly misleading statement"); *Krommenhock v.*

*Post Foods, LLC*, 255 F.Supp.3d 938, 957 (N.D. Cal. 2017) (finding that because the "healthy" statement was made in connection with a statement about a nutrient, the statement was not false or misleading).  Any confusion Plaintiff has about the "protein packed" claim is thus easily resolved by just looking at the front label of the product that explicitly discloses in large font that the product contains "4g Plant Protein/110 Calories."

Further, even if Plaintiff were somehow confused by the amount of protein in the product, despite it being prominently displayed on the front of the package, Plaintiff can easily review the Nutrition Facts.  As the court noted in *Kodiak*: "even if a consumer were still uncertain on the meaning of 'protein-packed' after seeing the grams of protein listed clearly on the front of the box, a reasonable consumer would be aware of the nutrition facts label on the back or side of the box as a means to clarify any uncertainty."  537 F.Supp.3d at 1152.  Quite simply, no reasonable consumer who bothers to read either the front or back of this product can be confused about the amount of protein in the product.

There is no reason that Defendant should be treated differently than defendants in *Kodiak* or *Hadley*.  Plaintiff here cannot avoid the case law requiring consideration of the challenged claim in the context of the label as a whole by merely cropping out the protein disclosures.  As such, this Court should dismiss with prejudice Plaintiff's wholly unreasonable argument that a consumer would be deceived by a "protein packed" claim when the product prominently discloses the protein on the front of the package.

Beyond the fact that no reasonable consumer would be misled by the term "protein packed" where the protein content is openly disclosed on the front and back label, a reasonable consumer would also not rely on the term "protein packed" because it has no objective, enforceable definition among consumers.  As such, it is not actionable as a matter of law.  In considering a motion to dismiss, district courts "often resolve whether a statement is puffery."  *Cook, Perkiss & Liehe, Inc. v. N.*

1   *Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).  "Specific,

2   quantifiable 'statements of fact' that refer to a product's absolute characteristics may

3   constitute false advertising, while general, subjective, unverifiable claims are 'mere

4   puffery' that cannot."  *Edmundson v. P&G*, 537 F. App'x 708, 709 (9th Cir. 2013).

5          "Non-specific, non-measurable assertions are classic non-actionable puffery."

6   *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1316 (granting a motion to

7   dismiss because claims that a product contains a "tad" or a "kiss" of honey lack

8   "clear, objective indication of their levels") (E.D. Cal. 2014); *see also Bronson v.

9   Johnson & Johnson, Inc.*, 2013 U.S. Dist. LEXIS 54029, at *31-32 (N.D. Cal. Apr.

10  16, 2013) ("no reasonable consumer would conclude, based on the presence of the

11  word 'essential' in the name 'Splenda Essentials,' that the Splenda products were

12  essential to their diet"); *Delacruz v. Cytosport, Inc.,* 2012 U.S. Dist. LEXIS 51094,

13  at *19 (N.D. Cal. Apr. 11, 2012) ("The word 'ideal' is vague, highly subjective, and

14  non-actionable, like 'superb, uncompromising quality,' . . . and 'high-performance'

15  and 'top of the line'"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973

16  (N.D. Cal. 2008) ("higher performance," "longer battery life," "richer multimedia

17  experience," and "faster access to data" non-actionable).

18         The term "protein packed" is non-measurable and non-specific puffery.

19  Similar to the aforementioned terms "tad" or "kiss" or "superb" or

20  "uncompromising," the term "packed" is vague and does not actually or necessarily

21  refer to a quantifiable amount such as grams per serving, per calorie or per gram

22  weight, or "packed" based on individual consumer needs for protein or consumption

23  of a given food product.  Whether a product is "protein packed" would therefore be

24  a subjective measurement.

25         Further, beyond the phrase itself being non-quantifiable puffery, the "protein

26  packed" claim challenged here features similarly non-measurable assertions

27  surrounding the "protein packed" claims.  On the front of the package the phrase

28  "protein packed" is directly preceded by the phrase "ridiculously tasty."  Further, on

1    the back of the package the phrase "protein-packed" is followed by the term

2    "craveable."  As case law makes clear context of the advertising as whole may be

3    considered when determining whether the statements on the packaging are deceptive

4    or misleading.  *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d at 794; *Mullins v.*

5    *Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 889 (C.D. Cal. 2016) (citing *Lima v.*

6    *Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D. Cal. 2010) (recognizing that

7    "statements . . . cannot be considered in isolation because they contribute to the

8    deceptive context of the advertising as a whole.").  There is no subjective

9    measurement of whether the Gluten Free Bites are "ridiculously tasty" or

10   "craveable," and no reasonable consumer would interpret those to be quantifiable

11   measurements or claims about the product.  Taking the term "protein packed" in the

12   context of surrounding puffery, only further clarifies that the term is not a

13   quantifiable term or clearly defined term like "gluten free" or "organic," but,

14   instead, is a the type of puffery common in advertising that reasonable consumers

15   understand to not have a specific meaning.

16   **B.**   **Plaintiff Lacks Standing To Sue Under Consumer Protection Statutes Of**

17   **Other States**

18        Plaintiff's First Claim for Relief is a for "Violation of State Consumer

19   Protection Statutes" under which Plaintiff broadly alleges that the consumer

20   protection acts of ten states prohibit the conduct at issue in the suit.  FAC at ¶¶ 75-

21   78.  Plaintiff argues that the Multi-State Consumer Class at issue is limited to states

22   with "similar consumer protection laws under the facts of this case" and points to

23   ten states besides California that allegedly have similar consumer protection laws.

24   FAC at ¶ 66, n.6.  Yet, case law within the Ninth Circuit is increasingly clear that

25   Plaintiff, a citizen of California who purchased the product in California, does ***not***

26   have standing to bring claims under consumer protection statutes of other states.

27   Further, courts have also held that Plaintiff cannot simply group together ten

28   different state statutes in one cause of action, as Plaintiff must make separate

1  allegations and have a separate cause of action for each statute.

2      Article III standing is necessary for each and every claim brought in a lawsuit.

3  *Mercado v. Audi of Am., LLC*, 2019 WL 9051000, at *14 (C.D. Cal. Nov. 26, 2019)

4  (finding where "a complaint includes multiple claims, at least one named class

5  representative must have Article III standing to raise each claim."); *Soo v. Lorex*

6  *Corp.*, 2020 WL 5408117, at *11 (N.D. Cal. Sept. 9, 2020) (finding plaintiffs must

7  show they have standing for each claim they raise); *In re Glumetza Antitrust Litig.*,

8  2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020) (same).  The status of a case as

9  a class action does not impact this inquiry, as the U.S. Supreme Court has noted that

10  class action plaintiffs are still obliged to show Article III standing for each claim

11  asserted.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("That a suit may be

12  a class action . . . adds nothing to the question of standing, for even named plaintiffs

13  who represent a class 'must allege and show that they personally have been injured,

14  not that injury has been suffered by other, unidentified members of the class to

15  which they belong.'")

16      Courts within the Ninth Circuit routinely dismiss claims brought under state

17  laws that have no connection to the named plaintiffs.  *Kodiak* 537 F.Supp.3d at

18  1124-25 (granting motion to dismiss for claims brought under state law based on

19  finding "that **courts can address standing at the pleadings stage and dismiss**

20  **claims brought under state laws that have no connection to the named**

21  **plaintiffs**") (emphasis added); *Soo*, 2020 WL 5408117, at *10 ("While the Ninth

22  Circuit has not definitively answered whether named plaintiffs have standing to

23  pursue class claims under the common laws of states to which the named plaintiffs

24  have no connection, district courts in this Circuit routinely hold that they do not.");

25  *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072, 1072 n.3 (S.D. Cal.

26  2020) (providing examples and finding that there is a "growing trend" among

27  California district courts to address standing at the pleadings stage and dismiss

28  claims "under the laws of states in which no plaintiff resides or has purchased

1  products").

2  "Even in circumstances where courts have found they have discretion to defer

3  standing questions until after class certification, the standing inquiry can be

4  addressed when Plaintiffs bring claims from states where they do not have a

5  connection." *Kodiak* 537 F.Supp.3d at 1124-25; *see also In re Carrier IQ, Inc.,* 78

6  F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) (addressing standing prior to class

7  certification and finding "the named Plaintiffs do not have standing to assert claims

8  from states in which they do not reside"); S*enne v. Kansas City Royals Baseball

9  Corp.*, 114 F. Supp. 3d 906, 924 (N.D. Cal. 2015) (agreeing with the reasoning of *In

10  re Carrier IQ, Inc.*).  Here, Plaintiff has not and cannot allege a connection to the ten

11  jurisdictions where he does not reside and has not purchased Defendant's products.

12  Therefore, the Court should follow the lead of other courts within this Circuit and

13  find that Plaintiff lacks standing to bring claims under the laws of the states where

14  he does not reside and did not purchase the at-issue products.

15  Beyond Plaintiff's standing problems, Plaintiff cannot lump together disparate

16  claims in one cause of action as he attempts to do under his claim for "Violation of

17  State Consumer Protection Statutes."  Courts have been clear that a plaintiff cannot

18  mix separate consumer protection causes of action together and fold them into a

19  single cause of action.  *Kodiak* 537 F.Supp.3d at 1131 (dismissing plaintiffs' cause

20  of action combining numerous consumer protection statutes from various states and

21  noting "separate claims should not be lumped together into one cause of action");

22  *see also Swafford v. Int'l Bus. Machines Corp.*, 383 F. Supp. 3d 916, 932 n.4 (N.D.

23  Cal. 2019) (holding plaintiff cannot assert one cause of action for violations of the

24  California Labor Code and California Civil Code); *In re Nexus 6P Prods. Liab.

25  Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("[C]auses of action should not

26  group together multiple sources of law; rather, Plaintiffs should plead separate

27  causes of actions for each source of law, whether federal or state.").  Just like the

28  court in *Kodiak*, this Court too should dismiss Plaintiff's attempt to combine

1  consumer protection statutes of multiple states into a single cause of action.

2      Even if Plaintiff did have standing to bring these claims, to the extent Plaintiff

3  argues that the consumer protection statutes are "similar" to the consumer protection

4  statutes of California, the claim should be dismissed for the aforementioned reason

5  that a reasonable consumer would not be misled by Defendant's package claims.

6  **C.**      **Plaintiff's "Protein Packed" Claims Are Impliedly Preempted Because**

7        **They Seek To Enforce the FDCA**

8      Even were the Court to find that Plaintiff's claims are plausible, dismissal of

9  Plaintiff's "protein packed" claims are still appropriate because such claims are

10  preempted by federal law (thus depriving the Court of subject matter jurisdiction).

11  This preemption arises because Plaintiff's lawsuit is an effort to enforce 21 C.F.R. §

12  101.54 and 21 C.F.R. § 101.9(c)(7) through the guise of a false advertising lawsuit.

13  Such enforcement conflicts with Congress's decision not to afford private litigants

14  like Plaintiff a right of action to enforce the FDCA or implementing FDA

15  regulations.  *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531

16  U.S. 341, 353 (2001) (noting that private plaintiffs cannot bring claims that "exist

17  solely by virtue of the FDCA").

18      While there is a "narrow gap" through which private plaintiffs can sue for

19  "conduct that violates the FDCA," they cannot sue "because the conduct violates the

20  FDCA," as "such a claim would be preempted under *Buckman*."  *Perez v. Nidek*

21  *Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original).  Instead, private

22  plaintiffs may sue only if their claims are independently cognizable under

23  "traditional state tort law which had predated the federal enactments in question."

24  *Buckman*, 531 U.S. at 353; *see also Stengel v. Medtronic, Inc.*, 704 F.3d

25  1224, 1228, 1235 (9th Cir. 2013) (to avoid preemption, the state-law claim must

26  "predate[ ] the federal enactments in question" and "not exist solely by virtue of

27  those enactments").  Plaintiff's claims do not meet this standard.

28

Plaintiff's lawsuit is predicated on violations of the FDCA and California's Sherman Law – specifically violations of 21 C.F.R. § 101.54 and 21 C.F.R. § 101.9(c)(7)(iii).  As noted in the FAC, Plaintiff alleges that the "protein packed" statement exactly means that products are "high" in protein or constitute an "excellent source" of protein pursuant to the FDA definition and not based on other, specific facts supporting such conclusory allegations.  FAC ¶ 29.  Plaintiff even cites to the FDA regulations that provide a benchmark for the ability to claim that a food product is "high," "rich in," or "excellent source of" a particular nutrient, which is 10 grams or more per serving for protein.  *Id*. at ¶¶ 29-30; *See* 21 C.F.R. § 101.54; 21 C.F.R. § 101.9(c)(7)(iii).

Plaintiff does not (and cannot) identify any traditional state tort law duty to refrain from making protein claims violative of the FDA or to include the daily recommended value of protein on Nutrition Facts of a label.  The only state law duty related to such claims exists pursuant to California's Sherman Law.  Courts find preemption where a party relies "on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law."  *Chong v. Kind LLC*, 2022 U.S. Dist. LEXIS 27438, at *10 (N.D.Cal. Feb. 15, 2022).  These duties would not exist but for the FDA's decision to promulgate 21 C.F.R. § 101.54 and 21 C.F.R. § 101.9(c)(7)(iii).

Notably, despite his claim originating with and being governed by FDA regulations related to benchmark protein levels and disclosure of daily recommended value of protein, Plaintiff attempts to re-package his claims as deception claims.  Yet, even though Plaintiff nominally purports to sue under California law, his lawsuit indisputably "originates from, is governed by, and terminates according to federal law" because consumers supposedly interpret "protein packed" based on an FDA regulatory definition of "high."  *Stengel*, 704 F.3d at 1230.  Courts have recognized "the [FDCA's] public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under state law for

1   which there exists a private enforcement mechanism that in substance seeks to

2   enforce the FDCA." *Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 934, 930-40 (S.D.

3   Cal. 2020) (*quoting* L*oreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th

4   Cir. 2013)); *see also Goldsmith v. Allergan, Inc.*, 2011 U.S. Dist. LEXIS 6233, at

5   *26 (C.D. Cal. Jan. 13, 2011) ("[n]o matter how artfully the Complaint is pleaded in

6   attempting to enforce the FDCA, Plaintiff cannot enforce the FDCA's off-label

7   advertising provisions simply by calling it a violation of the UCL").

8         Plaintiff attempts to disguise his suit to enforce FDA standards as a deceptive

9   marketing claim by averring that the reasonable consumer interprets "protein

10  packed" to mean the product is "high" in protein or constitutes an "excellent source"

11  of protein.  FAC ¶ 28.  Plaintiff argues "this consumer belief is consistent with FDA

12  regulations that provide a benchmark for the ability to claim that a food product is

13  'high,' 'rich in,' or 'excellent source of' a particular nutrient" – 10 grams or more

14  per serving for protein, based on 21 C.F.R. § 101.54 and 21 C.F.R. §

15  101.9(c)(7)(iii).  *Id.* at ¶¶ 29-30.  Yet, this Court is not bound by Plaintiff's

16  conclusion.  Plaintiff offers no factual support for why a reasonable consumer would

17  believe "protein packed" constitutes at least 10 grams of protein per serving.

18  Instead, Plaintiff's only source for why a reasonable consumer believes this are

19  FDA regulations.

20        Similarly, Plaintiff never explains why a reasonable consumer would not

21  believe that "protein packed" means the product is a "good source" of protein

22  pursuant to FDA regulations, instead of a "high" or "excellent source" of protein.

23  See 21 C.F.R. § 101.54(c)(1) (requiring a food contain 10 to 19 percent of the RDI

24  or the DRV per reference amount customarily consumed to be called a "good

25  source" which equates here to 5 grams per serving like many of Defendant's

26  products).  This is because such an interpretation would cause Plaintiff's case to

27  collapse.  As Plaintiff admits "[a]ll Products contain 4 to 5 grams of protein per

28  serving."  FAC ¶ 26.  As such, ***many of the products at issue actually do serve as a***

1  ***"good source" of protein*** pursuant to 21 C.F.R. § 101.54(c)(1) in that they contain

2  the 5 grams of protein necessary to fall within the 10 to 19 percent of the daily

3  recommended value of protein.

4      Outside of Plaintiff's attempt to enforce FDA regulations, there is no reason

5  given why a reasonable consumer would presume 10 grams of protein are necessary

6  for a product to be "protein packed."  Taken most literally, a product that is "protein

7  packed" would be "packed" with protein, such as here, where the front of the label

8  declares "4g Plant Protein/110 Calories."  Another interpretation is that the product

9  is full of protein in comparison to the *gram weight* serving size of the product (as

10 opposed to grams of protein per serving).

11     Here, there are 4-5 grams of protein with a serving size of 24 grams and only

12 110 calories per serving.  One wonders why a reasonable consumer would believe

13 that such a product could not be "protein packed," while a product with a far larger

14 serving size that has 10 grams of protein in 70 grams and 220 calories per serving

15 could be "protein packed."  The two products have the same grams of protein per

16 calorie, but, according to Plaintiff's proffered definition, only one could be "protein

17 packed" (at 10 grams but "diluted" in far more product gram weight).

18     In fact, the front of the package here actually discloses the number of calories

19 next to the amount of protein, so consumers can clearly see how much protein there

20 is compared to the number of calories on both the front and back of the package.

21 There is no attempt to deceive consumers about how much protein is actually

22 packed in the product.  Outside of enforcing the FDA, there is no reason "protein

23 packed" should be measured based on grams per serving, instead of measuring the

24 amount of protein per gram or protein per calorie.

25     Plaintiff further alleged in the original Complaint, repeated in the FAC, that

26 Defendant failed to provide the daily recommended value of protein on the Nutrition

27 Facts, as required for products making claims related to protein content pursuant to

28 21 C.F.R. § 101.9(c)(7).  FAC ¶¶ 30-32.  Yet, courts have rejected similar claims of

deception for that alleged regulatory failure in the past.  In *Chong v. Kind*, the court addressed and rightly dismissed plaintiff's claim regarding the lack of a percent Daily Value in the Nutrition Facts for protein even though in that case, as here, the label made a protein content claim based on the nitrogen method.  *Chong* 2022 U.S. Dist. LEXIS 27438, at *10.  Judge Seeborg held in that case that the claim that protein bars were mislabeled because they failed to state the percent of daily value of protein in the Nutrition Facts panel as required when making a protein claim by FDA regulations was impliedly preempted.  *Id*.  This Court should reach the same conclusion with regard to Plaintiff's claim.

Lastly, in attempting to disguise this suit as a false advertising suit, Plaintiff tries to discount the fact that case law clearly supports finding implied preemption in this situation.  In the FAC, Plaintiff states: "To be clear, Plaintiff does not allege any claims pursuant to the FDCA and Sherman Law and relies on these regulations only to the extent they provide a predicate basis for liability under state and common law, as set forth herein."  FAC ¶ 52.  Nonsense.  Plaintiff cannot simply throw a disclaimer into a complaint and discount federal preemption and existing case law with a stroke of a keypad.

Based on the foregoing, this Court should dismiss Plaintiff's thinly-veiled effort to use a putative consumer class action to enforce the FDA's regulations as preempted and lacking subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1).

**D.    Plaintiff's Claims About Protein Quality Are Expressly Preempted**

Plaintiff amended his original Complaint to add in allegations regarding the quality of the protein in Defendant's Gluten Free Bites.  Plaintiff's argument is that the protein disclosure of 4 or 5 grams is based on nitrogen testing and is misleading because the protein contained in the product is plant protein, all of which cannot be fully digested or utilized.  Plaintiff specifically argues that the PDCAAS score (based on amino acid testing) is the mandated measure of protein quality that

accounts for the digestibility and quality of the protein.  However, multiple courts have considered and rejected Plaintiff's argument about protein quality because it is expressly preempted by the FDA, which allows protein claims to be made using the "nitrogen method" for measuring protein.

The FDCA, as amended, expressly preempts state claims that are "not identical to" its own requirements.  21 U.S.C. § 343-1(a); *see Hawkins v. Kroger Co.*, 906 F.3d 763, 769-70 (9th Cir. 2018); *Reid v. Johnson & Johnson*, 780 F.3d 952, 959-60 (9th Cir. 2015).  Thus, federal law under the FDCA or FDA regulations "displaces 'obligations or . . . provisions concerning the composition or labeling of food . . [that] ]a]re not imposed by or . . . [that] [d]iffer from those specifically imposed by' the FDCA." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 602 (9th Cir. 2018), *citing* 21 C.F.R. Section 100.1(c )(4).  FDCA regulations in fact expressly allow a manufacturer to use the nitrogen-method to calculate the level of protein in a product on the label, both on the front of law and in the Nutrition Facts declaration by gram weight.  *See id.* at 602; 21 C.F.R. § 101.9(c)(7).

Courts within the Ninth Circuit have addressed whether nitrogen-method protein claims on product front or back labels are misleading because consumers will believe that the full amount of protein is digestible.  In considering whether such claims were preempted, courts have looked to FDCA regulations and specifically pointed to 21 C.F.R. § 101.9(c)(7) as providing that the nitrogen method may be used to determine compliance with nutrition labeling.  *Nacarino*, 2022 U.S. Dist. LEXIS 23409 at *11-12 ("[g]iven the FDA's express approval of the nitrogen-content method and failure to require manufacturers to adjust for protein quality when stating the amount of protein in the nutrition label, it does not make sense to read the regulations as barring manufacturers from making identical statements elsewhere on their packaging."); *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 84477, *16 (N.D. Cal. Mar. 10, 2022) ("the FDA has now made clear that its regulations do not require protein content claims to adjust for digestibility"); *Chong*

2022 U.S. Dist. LEXIS 27438 at *3 ("[A] correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility").

Here, Defendant's failure to adjust the front label protein disclosure of 4 or 5 grams based on nitrogen testing by using the PDCAAS method to compute a lower value is exactly the same situation as in *Nacarino, Brown* and *Chong*.  This Court respectfully should follow suit and dismiss Plaintiff's claims about the protein quality as expressly preempted.  The regulations only provide that the PDCAAS method should be used when computing the percent Daily Value of protein in the Nutrition Facts panel.  21 C.F.R. § 101.9(c)(7).  But, as discussed in the prior section, Plaintiff's claims regarding the percent Daily Value on the back label are impliedly preempted under *Chong*.

**E.**   **Plaintiff's Claims About The Nutrition Label Fail Because He Did Not Allege Reliance**

Beyond the fact that Plaintiff's claim regarding Defendant's alleged failure to include the percent of daily value for protein on the Nutrition Facts on the back label fails as impliedly preempted under *Chong*, that claim also fails for lack of reliance.  As a matter of statutory standing for misrepresentation, fraud, or unlawful claims under the CLRA, UCL, and FAL, a plaintiff must have "actually relied on whatever defect in a product label allegedly makes it actionable when making her decision to buy the product."  *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125 (Cal. Ct. App. 2020); *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310 (Cal. 2011).  Where a plaintiff does not clearly allege reliance on the Nutrition Facts label in making a purchase, a claim based on the Nutrition Facts lacks reliance and must be dismissed. *Brown v. Van's Int'l Foods, Inc.*, 2022 U.S. Dist. LEXIS 84477, *27 (N.D. Cal. May 10, 2022) (noting that plaintiff had not plead facts showing that she looked at the Nutrition Facts label during the process of purchasing the Products, and, as such, the

court could not "reasonably infer that her purchasing decision was influenced by the missing information on the Nutrition Facts panel"); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) ("[p]laintiff has not pled that she ever looked at the nutrition panel. As such, it is implausible that she was deceived by its lack of disclosures.").

Here, Plaintiff never once states that he actually read the Nutrition Facts panel or depended on information (or lack of information) from that panel in making his purchase. *See e.g.* FAC at ¶ 9 ("[i]n purchasing the Products, Plaintiff was exposed to, read, and relied upon Defendant's labeling claims that were intended to appeal to consumers interested in protein-focused products. To the best of his recollection, Plaintiff read and relied on Defendant's labeling representations including 'protein packed,' and the Products did not have a percentage of the Daily Recommended Value ('DRV') listed for protein."). Vague allusions about reading the packaging are not enough to allege reliance on the allegedly deceptive omission of percent Daily Value of protein in the Nutrition Facts, especially under the heightened standards for fraud claims. As such, to the degree the Court does not find Plaintiff's back label claims are impliedly preempted, claims related to the Nutrition Facts panel should be dismissed for lack of reliance regarding the alleged failure to disclose the corrected percent Daily Value of protein in the Nutrition Facts. Given that Plaintiff has already amended his Complaint, he should not be given another chance to amend.

**F.    Plaintiff Has Failed to Plead Fraud With the Requisite Specificity**

When claims under the CLRA, FAL and UCL are grounded in fraud, the complaint must "must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and

1  UCL.")  "[A] plaintiff must set forth more than the neutral facts necessary to

2  identify the transaction. The plaintiff must set forth what is false or misleading about

3  a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

4  1106 (9th Cir. 2003).

5        Plaintiff makes allegations common to all claims that Defendant made a

6  "misleading" representation and "intended to deceive" consumers with the "protein

7  packed" representation.  *See,* FAC ¶¶ 64-65.  These allegations indisputably sound

8  in fraud.  *See, e.g., Kane v. Chobani, Inc*., 2013 U.S. Dist. LEXIS 134385, *24 n.4

9  (N.D. Cal. Sept. 19, 2013) (finding that the plaintiffs' non-fraud claims were subject

10 to Rule 9(b) because they were premised on the same allegations of false and

11 misleading labeling representations).  Accordingly, in addition to pleading claims

12 that are "plausible" on their face, Plaintiff must state the circumstances of each

13 claim for relief with particularity, including the "who, what, when, where, and how

14 of the misconduct charged.'"  *Vess* 317 F.3d 1097 at 1106 (9th Cir. 2003).

15       Plaintiff has not alleged fraud with the necessary particularity to meet the

16 heightened pleading standard.  Plaintiff has in essence failed to plead the specific

17 "what" and "how" of the alleged fraud committed and does not set forth what is

18 actually false or misleading about the claim.  Besides the conclusory statement that

19 "[r]easonable consumers, including Plaintiff, believe that the term 'PROTEIN

20 PACKED' means that the products are 'high' in protein or constitute an 'excellent

21 source' of protein," Plaintiff provides no specific facts as to how the "protein

22 packed" claim on the label of the Gluten Free Bites is misleading.

23       For example, there are no facts as to why consumers are allegedly interpreting

24 "protein packed" to mean a "high" or an "excellent source" of protein other than

25 Plaintiff's citation to the FDA regulations.  Nor is it clear why a reasonable

26 consumer would not instead believe "protein packed" means a "good" source of

27 protein pursuant to FDA regulations or is "full" of protein for the calories or serving

28

1  size.  Plaintiff's conclusions as to consumers' belief cannot substitute for specific

2  facts as to how consumers interpret "protein packed."

3      Put another way, Plaintiff has failed to explain how consumers were

4  defrauded when, as discussed above, the label clearly states on the front of the

5  product how many grams of protein per serving are there are in large font (in

6  addition to grams per 110 calories).  Once again, Plaintiff is seeking to plead fraud

7  without providing specific facts as to how consumers were actually misled by a

8  claim about the amount of protein per serving when that information is also clearly

9  on the front and back of the label.  There are no allegations that consumers do not

10 see these protein declarations or cannot see them due to font size or placement on

11 the product.

12     It is not sufficient to claim that a reasonable consumer believes the label

13 indicates a "high" or "excellent source" of protein, where the label discloses the

14 amount of protein in large font on the front of the package.  That allegation of fraud

15 is implausible without additional specific facts.  Plaintiff has not met the bare

16 minimum of showing that his claim is plausible, and is not anywhere near

17 sufficiently pleading specific facts to allege fraud under the heightened pleading

18 standards of Rule 9(b).

19     And, as noted above, regarding Plaintiffs' claims of deception for the alleged

20 failure to disclose the percent Daily Value of protein in the Nutrition Facts, Plaintiff

21 does not allege reliance at all, let alone specific facts for reliance.  Plaintiff does not

22 state that he read the Nutrition Facts panel at all, let alone claim that he looked for

23 the percent Daily Value of protein.  Plaintiff can hardly claim in good faith reliance

24 if he did not bother to look at all; merely stating the percent Daily Value was not

25 declared is insufficient for purposes of fraud.

26     Accordingly, Plaintiff's claims should be dismissed without leave to amend

27 for this separate and independent reason as well.

28             **IV.   <u>CONCLUSION</u>**

1      For all of the foregoing reasons, Plaintiff's FAC against West Thomas should

2 be dismissed without leave to amend.

3

4 Dated:  September 23, 2022

5                           Respectfully submitted,

6

7                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8                           By                    

9                                    CHRISTOPHER VAN GUNDY

10                                MICHAEL A. LUNDHOLM

11                                Attorneys for Defendant

12                           WEST THOMAS PARTNERS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4877-3679-0316.5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE</u>

John Forrett v. West Thomas Partners, LLC d/b/a GFB

5:22-cv-02048-NC

<u>STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO</u>

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On September 23, 2022, I served true copies of the following document(s) described as

**DEFENDANT WEST THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE FIRST AMENDED**

**DECLARATION OF ELLIOTT RADER IN SUPPORT OF DEFENDANT WEST THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**[PROPOSED] ORDER GRANTING DEFENDANT WEST THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

**SERVICE LIST**

| | |
|---|---|
| Christopher T. Aumais, | Attorneys for Plaintiff |
| Christopher B. Good, | JOHN FORRETT |
| Ryan Gustafson, | |
| **GOOD GUSTAFSON AUMAIS LLP** | |
| 2330 Westwood Boulevard, Suite 103 | |
| Los Angeles, California 90064 | |
| Telephone: (310) 274-4663 | |
| E-mail: cta@ggallp.com | |
|       cbg@ggallp.com | |
|       irg@ggallp.com | |
| | |
| Steffan T. Keeton | Attorneys for Plaintiff |
| **THE KEETON FIRM LLC** | JOHN FORRETT |
| 100 S Commons, Ste. 102 | |
| Pittsburgh PA 15212 | |
| Tel: (888) 412-5291 | |
| Email: stkeeton@keetonfirm.com | |

SMRH:4877-3679-0316.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 23, 2022, at San Francisco, California.

_____
Justin Mychel Robinson-Williams