1
2
3
4
5
6
7
8

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CHRISTOPHER VAN GUNDY, Cal. Bar No. 152359
  cvangundy@sheppardmullin.com
Four Embarcadero Ctr., 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile:  (415) 434-3947

Attorneys for Defendant,
West Thomas Partners, LLC

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22

| John Forrett, individually, and on behalf of those similarly situated, | Case No. 5:22-cv-02048-NC |
|---|---|
| Plaintiff, | **DEFENDANT WEST THOMAS PARTNERS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| West Thomas Partners, LLC d/b/a GFB, | Date:         July 5, 2023 |
| Defendant. | Time:        1:00 p.m. PST |
| | Courtroom:  5 |
| | The Honorable Nathanael M. Cousins |
| | Filed: March 30, 2022 |
| | Summons Served: May 10, 2022 |

23
24
25
26
27
28

SMRH:4886-5741-8855.2                    DEFENDANT'S NOTICE OF MOTION AND  MOTION TO DISMISS SAC

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 5, 2023, at 1:00 p.m., in Courtroom 5 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA, 95113, the Honorable Nathanael M. Cousins, Defendant West Thomas Partners, LLC ("West Thomas" or "Defendant") will and hereby does move the Court for an order dismissing, with prejudice, the Second Amended Complaint ("SAC") and each claim filed therein by Plaintiff John Forrett ("Plaintiff").

West Thomas brings this Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiff lacks subject matter jurisdiction, and because Plaintiff has failed to state claims upon which relief can be granted, respectively.  The SAC alleges four claims for relief:  (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (4) Unjust Enrichment.  Plaintiff also seeks injunctive relief and to represent a nationwide putative class of consumers.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice and exhibits thereto, the Declaration of Elliott Rader submitted on the motion to dismiss the First Amended Complaint, all pleadings and documents on file in this case, and on such other written and oral argument as may be presented to the Court.

Dated:  May 31, 2023

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
CHRISTOPHER VAN GUNDY
Attorneys for Defendant
WEST THOMAS PARTNERS, LLC

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................2

III.  ARGUMENT .....................................................................................................4

    A.    No Reasonable Consumer Would Be Misled By Defendant's "Protein Packed" and "Lack of Daily Value" Claims ..............................................5

    B.    Plaintiff's "New" Allegations of Deception Fail Due To Lack of Specificity.........10

    C.    Plaintiff's "Protein Packed" Claims Are Preempted Because They Seek To Enforce the FDCA..............................................11

    D.    Plaintiff Lacks Standing To Assert Injunctive Relief. ..............................14

IV.   CONCLUSION ................................................................................................15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

<u>Cases</u>

3

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt, Inc.*
4     744 F.3d 595 (9th Cir. 2014)...................................................................................... 8

5

*Ashcroft v. Iqbal*
6     556 U.S. 662 (2009) .................................................................................................. 4

7 *Becerra v. Dr Pepper/Seven Up, Inc.*
    945 F.3d 1225 (9th Cir. 2019)............................................................................... 5, 6
8

9 *Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................................. 4

10
*Brown v. Natures Path Foods, Inc.*
11     2022 U.S. Dist. LEXIS 84477 (N.D. Cal. Mar. 10, 2022) .................................. 13, 14

12 *Buckman Co. v. Plaintiffs' Legal Comm.*
    531 U.S. 341 (2001) ................................................................................................ 11
13

14 *Chong v. Kind LLC*
    2022 U.S. Dist. LEXIS 27438 (N.D.Cal. Feb. 15, 2022)........................... 12, 13, 14

15
*Cooper v. Pickett*
16     137 F.3d 616 (9th Cir. 1997).................................................................................... 10

17 *Davidson v. Kimberly-Clark Corp.*
    889 F.3d 956 (9th Cir. 2018)................................................................................... 14
18

19 *Delman v. J. Crew Grp., Inc.*
    2017 U.S. Dist. LEXIS 221646 .................................................................................. 6

20
*Durnford v. MusclePharm Corp.*
21     907 F.3d 595 (9th Cir. 2018)................................................................................... 13

22 *Ebner v. Fresh, Inc.*
    838 F.3d 958 (9th Cir. 2016).................................................................................. 5, 6
23

24 *Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011).................................................................................... 5

25
*Goldsmith v. Allergan, Inc.*
26     2011 U.S. Dist. LEXIS 6233 (C.D. Cal. Jan. 13, 2011)......................................... 12

27 *Gomez v. Jelly Belly Candy Co.*
    2017 U.S. Dist. LEXIS 95471 (C.D. Cal. June 8, 2017)........................................ 15

28

*Hadley v. Kellogg Sales Co.*
  273 F. Supp. 3d 1052 (N.D. Cal. Aug. 10, 2017)...........................................................5, 8, 9

*Hawkins v. Kroger Co.*
  906 F.3d 763 (9th Cir. 2018)........................................................................................ 13

*Kane v. Chobani, Inc.*
  973 F. Supp. 2d 1120 (N.D. Cal. 2014) .........................................................................5

*Klammer v. Mondelez International, Inc.*
  2023 U.S. Dist. LEXIS 2939 (N.D. Cal. Jan. 4, 2023) .................................................9

*Lanovaz v. Twinings N. Am., Inc.*
  726 Fed.Appx. 590 (9th Cir. 2018) ............................................................................ 15

*Min Sook Shin v. Umeken, U.S.A., Inc.*
  2017 U.S. Dist. LEXIS 222372 (C.D. Cal. June 1, 2017)...........................................15

*Nacarino v. Kashi Co.*
  2022 U.S. Dist. LEXIS 23409 (N.D. Cal. Feb. 9, 2022)......................................13, 14

*Perez v. Nidek Co.*
  711 F.3d 1109 (9th Cir. 2013) .................................................................................... 11

*Rahman v. Mott's, LLP*
  2014 U.S. Dist. LEXIS 49169 (N.D. Cal. Apr. 8, 2014)........................................10, 11

*Rausch v. Flatout, Inc.*
  2023 U.S. Dist. LEXIS 39231 (N.D. Cal. Mar. 8, 2023) ..............................................9

*Razo v. Ashley Furniture Indus.*
  782 Fed. App'x 632 (9th Cir. 2019) ..............................................................................6

*Reid v. Johnson & Johnson*
  780 F.3d 952 (9th Cir. 2015)...................................................................................... 13

*Rugg v. Johnson & Johnson*
  2018 U.S. Dist. LEXIS 101727 (N.D. Cal. June 18, 2018) ...........................................6

*Saul v. United States*
  928 F.2d 829 (9th Cir.1991)..........................................................................................4

*In re Seagate Tech. LLC Litig.*
  233 F.Supp.3d 776 (N.D. Cal. 2017) .............................................................................6

*Shaeffer v. Califia Farms, LLC*
  44 Cal.App.5th 1125 (2020)...........................................................................................5

*Shane v. Fla. Bottling, Inc.*
  2017 U.S. Dist. LEXIS 141069 (C.D. Cal. Aug. 9, 2017) .............................................6

SMRH:4886-5741-8855.2   DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAC

*Somers v. Beiersdorf, Inc.*
    467 F. Supp. 3d 934 (S.D. Cal. 2020) ............................................................ 12

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (9th Cir. 1997) ....................................................................... 10

*Stengel v. Medtronic, Inc.*
    704 F.3d 1224 (9th Cir. 2013) ................................................................. 11, 12

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ....................................................................... 10

**<u>Statutes and Regulations</u>**

21 C.F.R. § 101.9(c)(7) ..................................................................... 9, 11, 12, 13

21 C.F.R. § 101.13 ........................................................................................... 12

21 C.F.R. § 101.54 ........................................................................................... 11

21 U.S.C. §§ 101.9(c)(7) and 101.13 ............................................................... 11

21 U.S.C. § 337(a) ........................................................................................... 11

California's Consumer Legal Remedies Act (CLRA)

    Cal. Civ. Code § 1750 *et seq.* ...................................................... 3, 4, 5, 6, 7

California's Unfair Competition Law (UCL)

    Cal. Bus. & Prof. Code § 17200 *et seq.* ................................... 4, 5, 6, 7, 12

False Advertising Law (FAL)

    Cal. Bus. & Prof. Code §§ 17500 *et seq.* ...................................... 3, 4, 6, 7

Federal Food, Drug & Cosmetic Act (FDCA) ........................................ 2, 11, 12, 13

    21 U.S.C. § 343-1 ...................................................................................... 1, 9

    21 U.S.C. § 343-1(a) ..................................................................................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant West Thomas Partners, LLC ("Defendant" or "West Thomas") hereby respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Second Amended Complaint ("SAC").

## I.  INTRODUCTION

This is a case of purported fraud, and the essential deception alleged in the First Amended Complaint, dismissed in its entirety with leave to amend, has not changed in the Second Amended Complaint.  In both pleadings, Plaintiffs claim they paid too much for Defendant's "Gluten Free Bites" because the front of label statements "Protein Packed" and "4G Plant Protein" were deceptive where less than 4 grams per serving of protein can be used by the body.  Plaintiffs further alleged previously and in the current complaint, that this deception was compounded by the fact that Defendant failed to disclose the percent Daily Value of protein in the Nutrition Facts Panel ("NFP") on the back of the package.

In its March 27, 2023 order dismissing the First Amended Complaint (Dkt. No. 40, the "Order"), the Court found this alleged deception non-actionable because it was implausible, mere puffery, and was preempted by the federal Food, Drug & Cosmetic Act ("FDCA"), Section 360k(a) [21 U.S.C. § 343-1].  The entire First Amended Complaint was dismissed with leave to amend.  Plaintiffs' attempt at re-pleading in the Second Amended Complaint fails because they have simply added further explanatory facts to the same essential deception alleged as before.

For example, Plaintiffs now claim that the products in question offer only 3.2 grams protein available to the body instead of 4 grams protein, but this is simply a variant of their prior allegations that Defendant overstated the amount of protein by implying the product was "high" in protein.  It is also implausible that a reasonable consumer would balk at buying a product that has slightly less protein (3.2g versus 4g) than what is declared front of pack.  Similarly, Plaintiffs now provide more detail about reliance on information on the back of package Nutrition Facts Panel – specifically, Defendant's alleged failure to disclose FDA's Daily Value of protein.  But the Court already has rejected this additional aspect of the alleged deception regarding failing to disclose,

and in any event, it is implausible that the "correct" Daily Value of 6% (3.2g/50g) instead of 8% (4g/50g) would have been material to a reasonable consumer.

Even assuming the 3.2 grams of protein is correct, U.S. Food and Drug Administration ("FDA") regulations preempt these state-law claims because they permit companies on front of pack to declare protein values using testing that understate what amount of protein is actually available for the body.  Plaintiffs essentially claim that state consumer protection law requires a disclosure of 3.2 grams on front of package, but that is "not identical to" FDCA regulations permitting a declaration of 4 grams (which Plaintiffs do not dispute), and thus Plaintiffs' claimed deception is preempted.

For all of the reasons stated more fully herein, the Court respectfully should dismiss the Second Amended Complaint in its entirety with prejudice.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

The general facts are well-known to the Court, as reflected in the Court's Order granting the motion to dismiss the First Amended Complaint.  As the Court noted in the Order, the product front of packaging declares "RIDICULOUSLY TASTY/PROTEIN PACKED" and "4G Plant Protein/110 Calories"; on the back label, the product declares "protein-packed craveable snack" and noted 4 grams protein in the NFP.  Order at 3.  True and correct pictures of the products identified in the First Amended Complaint are attached to the Rader declaration, submitted with the prior motion to dismiss and accepted for consideration by the Court.  *See* Dkt. No. 19-1.

In the Order, the Court reiterated allegations from the First Amended Complaint that Defendant deceived Plaintiff into thinking the products overstated the amount of protein as an excellent source of protein (10g) with "protein packed" by "artfully omitting" the percent Daily Value of protein in the back NFP.  Order at 3.  As the Court noted, Plaintiff further alleged in the prior pleading that the "quantity of protein in the Gluten Free Bites was misleading because not all of the protein is digestible and of the same 'quality.'"  *Id.*  Further, "Forrett specifically takes issue that plant proteins have a lower PDCAAS score and are allegedly 'low-quality' proteins because of the PDCAAS score."  *Id.* at 3-4.

On the basis of these allegations, the Court found Plaintiff's allegations of deception "implausible" and that FDA regulations preempted the alleged violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (4) breach of express warranty.  The Court reasoned that "protein-packed" was not misleading because the amount of protein, 4 grams, was disclosed on the front and back, and because the term was mere "puffery."  Order at 10.

In the Second Amended Complaint, Plaintiff continues to allege deception from label claims of "protein-packed" and "4G plant protein": "[t]o capitalize on this trend [protein-focused foods], Defendant prominently claims on the front of its Products that they are "PROTEIN-PACKED" and provide "4G PLANT PROTEIN.  SAC, ¶ 3.  Plaintiff still claims that the amount of protein is overstated: "[c]onsumers, in turn, reasonably expect that each product will actually provide the amount of protein per serving claimed on the front of the product package in a form the body can use.  *Id.*  And once again, Plaintiff claims that "Protein-Packed" and "4G Plant Protein" are deceptive because Defendant allegedly failed to calculate protein according to PDCAAS, "the FDA required method for measuring protein quality, and use that method to declare the percent Daily Value of protein in the NFP.  SAC, ¶¶ 5, 6; *see also* SAC, ¶ 8 ("the protein claims on the front of the package are unlawful in violation of parallel state and federal laws because Defendant did not comply with the regulatory requirements for making a protein claim . . . . ").

In the Second Amended Complaint, Plaintiff simply provides more detail as to why the 4 grams of declared protein is overstated.  The use of pea protein and brown rice protein reduces the amount of protein for the body in certain proportions, ranging from 61% to 89.3% of the 4 grams declared.  SAC, ¶ 8.  Plaintiff later pleads that the actual amount of protein in the challenged products amounts to 3.2 grams or less, without explaining exactly how that figured is calculated.  SAC, ¶ 91.

Repeatedly throughout the SAC, Plaintiff claims that he would not have bought the product or would not have paid the full purchase had he known he was receiving less than 4 grams of declared protein (again, calculated to be 3.2 grams), or had the Daily Value of protein been declared in the NFP.  SAC, ¶ 91.  According to Plaintiff, the FDA Daily Value for protein is 50 grams, so he would have bought the challenged products if the Daily Value was 8% (4g/50g) but not if the Daily Value was the alleged 6% (3.2g/50g).  *Id.*

As before, Plaintiff pleads violations of the UCL, FAL, and CLRA, but has dropped any breach of warranty claims.  Even though the Court dismissed the unjust enrichment claim as not a true claim for relief, it appears again in the Second Amended Complaint.  Plaintiff seeks a nationwide class, damages, restitution, and injunctive relief.

## III.   ARGUMENT

West Thomas moves for dismissal of the SAC for lack of subject matter jurisdiction and lack of standing under 12(b)(1), and for Plaintiff's failure to state a claim upon which relief can be granted, under Rule 12(b)(6).  Rule 12(b)(1) requires dismissal of claims for which a plaintiff lacks constitutional standing or which are federally preempted.  *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991) (finding that preemption deprives the court of subject matter jurisdiction).  Federal Rule of Civil Procedure ("Rule") 12(b)(6), on the other hand, requires dismissal where a plaintiff fails to state a plausible claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (finding that a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and "enough facts to state a claim to relief that is plausible on its face.").

Plaintiff must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Whether a complaint states a plausible claim requires "the reviewing court to draw on its judicial experience and common sense."  *Id*. at 683.  Indeed, "some threshold of plausibility must be crossed at the outset before a [consumer class action] case should be permitted to go into its inevitably costly and protracted discovery phase."  *Twombly*, 550 U.S. at 558.

1    Although the Court on a motion to dismiss must assume all ***facts*** pled by a plaintiff as true,

2    the Court is not required to "assume the truth of legal conclusions merely because they are cast in

3    the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  In addition,

4    a court may consider on a motion to dismiss documents "whose contents are alleged in a complaint

5    or whose contents are essential to a claim and whose authenticity no party questions, but which are

6    not physically attached to the plaintiff's pleading." *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d

7    1052, 1061 (N.D. Cal. Aug. 10, 2017).  Thus, "conclusory allegations of law and unwarranted

8    inferences are insufficient to defeat a motion to dismiss," and "a plaintiff may plead himself out of

9    court" with facts, including those incorporated into the complaint by reference, "which establish

10   that [the plaintiff] cannot prevail on his . . . claim." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120,

11   1127 (N.D. Cal. 2014).

12   Under this standard, as set forth below, Plaintiff has not and cannot state any claim for

13   relief because it is not plausible that a reasonable consumer would be misled as Plaintiff claims.

14   Additionally, or alternatively, the Court lacks subject matter jurisdiction over the action due to

15   federal preemption of Plaintiff's state-law claims.  Lastly, Plaintiff lacks standing to bring

16   injunctive relief because he is now aware of the alleged deception.

17   **A.**   **No Reasonable Consumer Would Be Misled By Defendant's "Protein Packed" and**

18        **"Lack of Daily Value" Claims**

19   Plaintiff's claims under the California consumer-protection statutes pled here are governed

20   by the "reasonable consumer" standard.  *Becerra v. Dr Pepper/Seven Up, Inc.,* 945 F.3d 1225,

21   1228 (9th Cir. 2019).  This means that only those statements that are "'likely' to deceive a

22   'reasonable consumer' are actionable under the Unfair Competition Law, the false advertising law

23   and the CLRA." *Shaeffer v. Califia Farms, LLC,* 44 Cal.App.5th 1125, 1140 (2020).  This test

24   "requires more than a mere possibility that [a product's] label 'might conceivably be

25   misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh,*

26   *Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co*., 105 Cal.App.4th

27   496, 507 (2003)).  Rather, "the reasonable consumer standard requires a probability 'that a

28

significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id*.

The context of the advertising as a whole should be considered when determining whether the statements on the packaging are deceptive or misleading.  *Razo v. Ashley Furniture Indus.*, 782 Fed. App'x 632 (9th Cir. 2019) (recognizing that a defendant's allegedly deceptive representations must be viewed "reasonably and in context" to determine whether the material as a whole is misleading).  "Because the 'reasonable consumer' inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement . . . in context, is such that no reasonable consumer could be misled in the manner claimed by the plaintiff."  *Rugg v. Johnson & Johnson*, 2018 U.S. Dist. LEXIS 101727, at *9 (N.D. Cal. June 18, 2018); *In re Seagate Tech. LLC Litig.*, 233 F.Supp.3d 776, 794 (N.D. Cal. 2017) (dismissing a claim where "Plaintiffs do not allege that the statements were made in a context that suggests a particular level of verifiable reliability or performance").  A determination of whether any statement is false or misleading requires that the actual statement, not cherry-picked words or phrases, be "read reasonably and in context."  *Shane v. Fla. Bottling, Inc.*, 2017 U.S. Dist. LEXIS 141069, at **11-12 (C.D. Cal. Aug. 9, 2017); *Delman v. J. Crew Grp., Inc*., 2017 U.S. Dist. LEXIS 221646, at *21 ("The question is how a reasonable consumer would interpret the phrase … in the context of the specific commercial interaction that Plaintiff has challenged.").

Where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product in question, dismissal is appropriate.  *See, e.g., Becerra*, 945 F.3d at 1229 (affirming dismissal of UCL, FAL, and CLRA claims on motion to dismiss because no reasonable consumer would be misled that the word "diet" in a soft drink's brand name promises weight loss or healthy weight management); *Ebner*, 838 F.3d at 966 (affirming dismissal of UCLA, FAL and CLRA claims where the Court concluded the general public would not be deceived about the volume of the container of the product where, amongst other facts, the label accurately stated the weight).

Perhaps most importantly and most akin to the facts at hand, a federal court in California considered virtually identical "protein-packed" claims and, in accounting for the full package,

1   found that in a strikingly similar context a reasonable consumer would find such claims are ***not***

2   misleading.  In *Stewart v. Kodiak Cakes, LLC,* plaintiff claimed defendant used deceptive

3   marketing tactics on its products' label, including the statement "protein-packed."  537 F.Supp.3d

4   1103, 1152 (S.D. Cal. 2021).  Defendant argued that these claims were implausible because the

5   front and back of the package stated the grams of protein per serving on the product.  *Id.* at 1152-

6   1153.  The pictures of the product showed that the packaging included both a "protein-packed"

7   statement and the "number of grams of protein in roughly the same large, bold typeface on the

8   front of the box."  *Id.*  Based on this, the Court granted Defendant's motion and dismissed

9   "Plaintiffs' CLRA, FAL, and the fraudulent prong of the UCL causes of action premised on

10  consumer deception through packaging and advertising that contained the statement 'protein-

11  packed.'"  *Id.*

12          First, once again in the Second Amended Complaint, Plaintiff alleges deception from

13  "Protein Packed," even though the Court already has found such deception to be implausible and

14  the phrase itself to be non-actionable puffery.  And as before, Plaintiff's pleading glosses over the

15  fact that "Protein Packed" appears on front of the product package with "110 Calories."  Taken

16  together, the front of package label declarations inform the consumer that the product is "packed"

17  with protein in the sense there are 4 grams of plant protein in 110 calories.

18          There is nothing new about Plaintiff's re-hashed "Protein Packed" and "4G Plant Protein"

19  claims of deception other than some additional facts.  Plaintiff still claims deception from "Protein

20  Packed," "4G Plant Protein" together with the alleged failure to declare the Daily Value of protein

21  in the NFP.  Now, though, instead of being misled into believing the challenged products offered

22  an "excellent" source of protein (where FDA allegedly defines "high" "excellent" as 20% of Daily

23  Value), Plaintiff claims he expected 4 grams of protein to be available for his body to use, and not

24  3.2 grams.

25          This claim is as implausible as his former pleading.  Plaintiff provides no explanation as to

26  why a reasonable consumer plausibly would have bought the product with 4 grams of available

27  protein but not 3.2 grams, or that 8% Daily Value protein was acceptable but 6% was not.  To

28  survive a motion to dismiss, particularly under the strict Rule 9(b) of the Federal Rules of Civil

Procedure for pleading fraud (*see below*), Plaintiff must plead with specificity the plausibility of his claims, namely, how "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled," but he has not.

Plaintiff already pled defectively in his First Amended Complaint that the protein disclosures on the Gluten Free Bites are misleading and deceptive because the plant proteins used are allegedly lower quality and thus consumers are convinced they are getting more protein than they actually are. FAC at ¶¶ 39-46. Plaintiff thus makes an extended version of this same argument in his Second Amended Complaint, but adds no facts that materially alter the legal analysis. The Court's order dismissing the case with leave to amend considered Plaintiff's current pleading already, noting "Forrett argues that the PDCAAS score is the method of protein measurement that accounts for the quality and digestibility of the protein… Forrett specifically takes issue that plant proteins have a lower PDCAAS score and are allegedly 'low-quality proteins' because of the PDCAAS score." See Dkt. 40 at 3-4.

Plaintiff also attempts to plead around this Court's explicit holding regarding the term "Protein Packed" by again claiming that "packed" characterizes the level of a nutrient. This Court held, however, that it was following "*Kodiak*, *Hadley*, and *Gourmet Nut* in concluding that the reasonable consumer would not be misled by the term 'protein-packed' on the Gluten Free Bites label because there is no quantitative benchmark for what it means. Like 'touch of' and different than 'lightly' the FDA does not define the term 'packed.'" Order at 10.

If anything, Plaintiff's new pleading of deception based on "Protein Packed" and "4G Plant Protein" contradicts his prior pleading and can be rejected for that reason as well. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt, Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). In his original and First Amended Complaint, Plaintiff alleged that he bought the challenged products based on these two claims because he thought the products were "high" in protein. Now trying to save his case, Plaintiff completely dispenses with this theory and claims he just wanted 4 grams of protein, which he concedes is 8% of Daily Value and therefore not "high" in protein.

Additionally, West Thomas does not try to hide the type of protein used – it in fact explicitly says "4G Plant Protein" on the front of the product near the "Protein Packed" claim

Plaintiff alleges is deceptive.  Defendant correctly discloses that plant protein is used instead of whey or other types of protein so that a reasonable consumer can determine what type of protein is best suited for their diet.  Many reasonable consumers may prefer 3.2 grams of plant protein versus 4 grams of animal protein, again reinforcing the implausibility of Plaintiff's claimed deception.

No amendment made by Plaintiff changes the fact that Plaintiff is pleading the same deficient legal theory– that the product labeling is deceptive because the protein claim is not calculated using the PDCAAS method and expressed as a Daily Value in the NFP on the back of the package.  The Court already has rejected those claims.  Repackaging the same failed argument does not qualify as legally viable amendments to the operative complaint.

In the Order on the First Amended Complaint, the Court granted leave to amend in part based on the Parties' submission of additional authorities.  Those case decisions do not advance Plaintiff's theory of deception.  In *Rausch v. Flatout, Inc.*, 2023 U.S. Dist. LEXIS 39231 (N.D. Cal. Mar. 8, 2023), previously cited by Plaintiff, the Court did not discuss the *Kodiak*, *Hadley* and *Gourmet Nut* line of cases adopted by the Court here.

Moreover, the district court in *Rausch* discussed preemption only in passing, in one footnote with reference to another case, and in one sentence, concluding that the state-law claims were "identical" to federal law and thus not preempted under the Nutrition Labeling and Education Act of 1990, 21 U.S.C. Section 343.  However, as more fully explained below, Plaintiff claims that "4G Plant Protein" is deceptive under state-law because it understates protein availability, but federal law expressly permits the understatement.  *See* 21 C.F.R. §101.9(c)(7).

In contrast, the recent authority submitted by Defendant shortly before issuance of the Court's Order refutes Plaintiff's legal theory.  In *Klammer v. Mondelez International, Inc.*, 2023 U.S. Dist. LEXIS 2939 (N.D. Cal. Jan. 4, 2023), the district court dismissed without leave to amend claims of deception based on "protein packed" and the failure to disclose the percent Daily Value of protein in the product at issue, relying on the *Kodiak* and *Gourmet Nut* cases cited by this Court but not the district court in *Rausch*.  Plaintiff here now claims that he read and relied upon

the NFP and would have acted differently had he seen the 6% Daily Value (3.2 grams protein),[1] but he does not explain why 6% percent Daily Value versus 8% Daily Value (4 grams protein) would have changed his purchasing decision.

**B.**   **Plaintiff's "New" Allegations of Deception Fail Due To Lack of Specificity**

Plaintiff's "new" claims in the Second Amended Complaint sound in fraud, and therefore must meet the heightened pleading requirements of particularly pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  As long explained by the Ninth Circuit, "averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Here, Plaintiff's lack of specificity as to *why* 3.2 grams or 6% of Daily Value of protein is not acceptable, or what other products Plaintiff would have bought and why, is fatal to Plaintiff's claims of deception.

The 0.8 gram difference in the alleged actual available protein and the declared 4 grams constitutes a difference of just 1.6% in the Daily Value for protein, based on FDA's recommendation of 50 grams per day for an adult with a 2,000 calorie per day diet.  Plaintiff is accusing Defendant of fraud, and thus should explain why that small difference supports such a claim from the standpoint of the reasonable consumer.  As noted, despite the small difference in available protein, consumers may prefer plant-based protein to animal protein for any number of reasons, such as perceptions that plant-based foods are healthier, a desire to avoid animal products due to dietary restrictions, issues of sustainability or animal cruelty.

Plaintiff also claims he would have bought competing products, but does not identify those products with specificity, or allege how they properly declared protein values.  SAC, ¶ 92.  Such general allegations of product "superiority" flunk Rule 9(b)'s requirements of specificity, and are puffery and cannot constitute a claim of deception because they are too vague.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).  In *Rahman v. Mott's, LLP*, 2014 U.S. Dist. LEXIS 49169 (N.D. Cal. Apr. 8, 2014), for example, the plaintiff's superiority claims

---

[1] The actual figure is 6.4%, but according to FDA rounding rules would be rounded down to 6%.

only survived a motion to dismiss the second amended complaint after the plaintiff identified the competing product and explained "why reasonable consumers would be likely to draw product comparison conclusions based on the labeling at issue . . . . " *Id.* at *14.

## C.   Plaintiff's "Protein Packed" Claims Are Preempted Because They Seek To Enforce the FDCA

Even were the Court to find that Plaintiff's claims are plausible, dismissal of Plaintiff's "protein packed" claims are still appropriate because such claims are preempted by federal law (thus depriving the Court of subject matter jurisdiction).  This preemption arises because Plaintiff's lawsuit is an effort to enforce 21 C.F.R. § 101.54 and 21 C.F.R. § 101.9(c)(7) through the guise of a false advertising lawsuit.  Such enforcement conflicts with Congress's decision not to afford private litigants like Plaintiff a right of action to enforce the FDCA or implementing FDA regulations.  *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (noting that private plaintiffs cannot bring claims that "exist solely by virtue of the FDCA").

While there is a "narrow gap" through which private plaintiffs can sue for "conduct that violates the FDCA," they cannot sue "because the conduct violates the FDCA," as "such a claim would be preempted under *Buckman*."  *Perez v. Nidek Co*., 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original).  Instead, private plaintiffs may sue only if their claims are independently cognizable under "traditional state tort law which had predated the federal enactments in question."  *Buckman*, 531 U.S. at 353; *see also Stengel v. Medtronic, Inc*., 704 F.3d 1224, 1228, 1235 (9th Cir. 2013) (to avoid preemption, the state-law claim must "predate[ ] the federal enactments in question" and "not exist solely by virtue of those enactments").  Plaintiff's claims do not meet this standard.

Here, Plaintiff's lawsuit is predicated on violations of the FDCA and California's Sherman Law – specifically violations of 21 U.S.C. Sections 101.9(c)(7) and 101.13, and Cal. Health & Safety Code Sections 110660 *et seq.  See e.g.* SAC ¶¶5, 6, 75.  Plaintiff does not (and cannot) identify any traditional state tort law duty to refrain from making protein claims violative of the

1    FDA or to include the Daily Value of protein in the NFP of a label.  The only state law duty

2    related to such claims exists pursuant to California's Sherman Law.

3           Courts find preemption where a party relies "on California's Sherman Law, which post-

4    dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and

5    regulations as state law."  *Chong v. Kind LLC*, 2022 U.S. Dist. LEXIS 27438, at *10 (N.D.Cal.

6    Feb. 15, 2022).  These duties would not exist but for the FDA's decision to promulgate 21 C.F.R. §

7    101.9(c)(7), and 21 C.F.R. § 101.13.  Notably, despite his claim originating with and being

8    governed by FDA regulations related to benchmark protein levels and disclosure of daily

9    recommended value of protein, Plaintiff attempts to re-package his claims as deception claims.

10          Yet, even though Plaintiff nominally purports to sue under California law, his lawsuit

11   indisputably "originates from, is governed by, and terminates according to federal law" because

12   consumers supposedly refuse to purchase or pay a premium for a product that is 3.2 grams of

13   protein instead of the declared 4 grams on front of package.  *Stengel*, 704 F.3d at 1230.  Courts

14   have recognized "the [FDCA's] public enforcement mechanism is thwarted if savvy plaintiffs can

15   label as arising under state law for which there exists a private enforcement mechanism that in

16   substance seeks to enforce the FDCA."  *Somers v. Beiersdorf, Inc*., 467 F. Supp. 3d 934, 930-40

17   (S.D. Cal. 2020) (*quoting Loreto v. Procter & Gamble Co*., 515 F. App'x 576, 579 (6th Cir.

18   2013)); *see also Goldsmith v. Allergan, Inc*., 2011 U.S. Dist. LEXIS 6233, at *26 (C.D. Cal. Jan.

19   13, 2011) ("[n]o matter how artfully the Complaint is pleaded in attempting to enforce the FDCA,

20   Plaintiff cannot enforce the FDCA's off-label advertising provisions simply by calling it a

21   violation of the UCL").

22          Thus, Defendant's successful argument on preemption regarding the First Amended

23   Complaint that protein quality claims are expressly preempted is still applicable.  Plaintiff pled in

24   his First Amended Complaint that the protein disclosure of 4 or 5 grams is based on nitrogen

25   testing and is misleading because the protein contained in the product is plant protein, all of which

26   cannot be fully digested or utilized.  Plaintiff again pleads that the PDCAAS score (based on

27   amino acid testing) is the mandated measure of protein quality that accounts for the digestibility

28

and quality of the protein, and that use of that test is required to avoid misleading the reasonable consumer under state law.

However, as previously argued, multiple courts have considered and rejected Plaintiff's argument about protein quality because it is expressly preempted by the FDA, which allows protein claims to be made using the "nitrogen method" for measuring protein. The FDCA, as amended, expressly preempts state claims that are "not identical to" its own requirements. 21 U.S.C. § 343-1(a); *see Hawkins v. Kroger Co.*, 906 F.3d 763, 769-70 (9th Cir. 2018); *Reid v. Johnson & Johnson*, 780 F.3d 952, 959-60 (9th Cir. 2015). Thus, federal law under the FDCA or FDA regulations "displaces 'obligations or . . . provisions concerning the composition or labeling of food . . [that] ]a]re not imposed by or . . . [that] [d]iffer from those specifically imposed by' the FDCA." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 602 (9th Cir. 2018), *citing* 21 C.F.R. Section 100.1(c )(4). FDCA regulations expressly allow a manufacturer to use the nitrogen-method to calculate the level of protein in a product on the label, both on the front of the package law and in the Nutrition Facts declaration by gram weight. *See id.* at 602; 21 C.F.R. § 101.9(c)(7).

Courts within the Ninth Circuit have addressed whether nitrogen-method protein claims on product front or back labels are misleading because consumers will believe that the full amount of protein is digestible. In considering whether such claims were preempted, courts have looked to FDCA regulations and specifically pointed to 21 C.F.R. § 101.9(c)(7) as providing that the nitrogen method may be used to determine compliance with nutrition labeling. *See e.g. Nacarino v. Kashi Co.* 2022 U.S. Dist. LEXIS 23409, *11-12 (N.D. Cal. Feb. 9, 2022) ("[g]iven the FDA's express approval of the nitrogen-content method and failure to require manufacturers to adjust for protein quality when stating the amount of protein in the nutrition label, it does not make sense to read the regulations as barring manufacturers from making identical statements elsewhere on their packaging."); *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 84477, *16 (N.D. Cal. Mar. 10, 2022) ("the FDA has now made clear that its regulations do not require protein content claims to adjust for digestibility"); *Chong v. Kind LLC,* 2022 U.S. Dist. LEXIS 27438, at *3 (N.D. Cal. Feb. 15, 2022) ("[A] correct reading of the regulations establishes that producers may state

1    grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and

2    without adjustment for digestibility").

3         Further, under Plaintiff's argument, liability would be extended to all products containing

4    plant proteins that make any claim about the protein using the commonly used nitrogen content

5    method.  As stated above, the FDA has expressly approved nitrogen-content method for measuring

6    protein, and case law has held that manufacturers can make statements using the nitrogen content

7    method.  *See Nacarino*, 2022 U.S. Dist. LEXIS 23409 at *11-12 (*"given the FDA's "express*

8    approval of the nitrogen-content method and failure to require manufacturers to adjust for protein

9    quality when stating the amount of protein in the nutrition label, it does not make sense to read the

10   regulations as barring manufacturers from making identical statements elsewhere on their

11   packaging.").  As such, many products are consistently and legally marketed using the nitrogen-

12   content method, not PDCAAS, and so a different result should not obtain here.

13        Defendant's failure to adjust the front label protein disclosure of 4 or 5 grams based on

14   nitrogen testing by using the PDCAAS method to compute a lower value is exactly the same

15   situation as in *Nacarino, Brown* and *Chong*.  Plaintiff had an opportunity to address this argument

16   in his prior opposition, but failed to do so.  The Court correctly found Plaintiff's claims as to an

17   overstated 4 grams of protein on the front of package correctly before, and should do so again

18   here.

19   **D.    Plaintiff Lacks Standing To Assert Injunctive Relief.**

20        For injunctive relief that addresses a prospective injury, "the *threat* of injury must be

21   'actual and imminent, not conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.,* 889

22   F.3d 956, 967 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)

23   (emphasis added)).  In other words, the "threatened injury must be *certainly impending*" and

24   allegations of "*possible* future injury are not sufficient."  *Davidson*, 889 F.3d at 967 (citing

25   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original)).  Here, Plaintiff

26   claims that he would like to purchase the challenged products someday in the future, but claims he

27   cannot rely on the declaration of protein.  SAC, ¶ 93.

28

This "someday" pleading makes no sense because obviously Plaintiff is aware of the testing issue sufficiently to approve of the filing of multiple complaints in the action.  In *Lanovaz v. Twinings N. Am., Inc.*, 726 Fed.Appx. 590, 591 (9th Cir. 2018), the Ninth Circuit confirmed that "someday" pleading is insufficient for Article III standing:

> A 'profession of an intent . . . is simply not enough' to satisfy Article III.  *Lujan*, 504 U.S. at 564.  A 'some day' intention – without any description of concrete plans, or indeed even any specification of when the some day will be – does not support a finding of the 'actual or imminent' injury that Article III requires.  Lanovaz's statement that she would 'consider buying' Twinings products does not satisfy this standard.

*Id.* (affirming grant of summary judgment on injunctive relief claim); *see also Min Sook Shin v. Umeken, U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 222372, **18-23 (C.D. Cal. June 1, 2017) (holding that "a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct--i.e., the plaintiff is still interested in purchasing the product in question")*; Gomez v. Jelly Belly Candy Co.*, 2017 U.S. Dist. LEXIS 95471, *5 (C.D. Cal. June 8, 2017).  Here, this is no reasonable way for Plaintiff ever to have the confidence that the challenged products meet his "100% 4 grams protein" requirement unless he engages in protein testing for each product, as he explicitly pled.

Even were Defendant to declare the Daily Value of protein, Plaintiff presumably would not trust that declaration without testing.  In fact, as the Rader Declaration points out, the percent Daily Value is now declared in the NFP.  Either Plaintiff "trusts" this declaration or he does not, but either way, he has failed to allege harm sufficiently to obtain injunctive relief.

Plaintiff has alleged no facts indicating there is a significant likelihood and immediate danger of being harmed.  The threat of any future injury would be merely hypothetical because obviously he is not serious about buying future product where he no longer trusts any protein declaration.  Accordingly, Plaintiff lacks standing to seek injunctive relief.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff's Second Amended Complaint against West Thomas should be dismissed without leave to amend.

1    Dated:  May 31, 2023

2                                    Respectfully submitted,

3                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4                                    By

5                                            CHRISTOPHER VAN GUNDY

6                                        Attorneys for Defendant
7                                    WEST THOMAS PARTNERS, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>PROOF OF SERVICE</u>

2

John Forrett v. West Thomas Partners, LLC d/b/a GFB

3

5:22-cv-02048-NC

4

<u>STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO</u>

5

At the time of service, I was over 18 years of age and **not a party to this action**.  I am

6

employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

7

On May 31, 2023, I served true copies of the following document(s) described as

8

**DEFENDANT WEST THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE**

9

**SECOND AMENDED COMPLAINT**

10

**DECLARATION OF ELLIOTT RADER IN SUPPORT OF DEFENDANT WEST THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE COMPLAINT**

11

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT WEST**

12

**THOMAS PARTNERS, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

13

**[PROPOSED] ORDER GRANTING DEFENDANT WEST THOMAS**

14

**PARTNERS, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

15

on the interested parties in this action as follows:

16

**SERVICE LIST**

17

18

Christopher T. Aumais,                          Attorneys for Plaintiff
Christopher B. Good,                            JOHN FORRETT

19

Ryan Gustafson,
**GOOD GUSTAFSON AUMAIS LLP** 2330

20

Westwood Boulevard, Suite 103
Los Angeles, California 90064

21

Telephone: (310) 274-4663
E-mail: cta@ggallp.com

22

        cbg@ggallp.com

23

        jrg@ggallp.com

24

Steffan T. Keeton                               Attorneys for Plaintiff
**THE KEETON FIRM LLC**                          JOHN FORRETT

25

100 S Commons, Ste. 102
Pittsburgh PA 15212

26

Tel: (888) 412-5291
Email: stkeeton@keetonfirm.com

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 31, 2023, at San Francisco, California.

Justin Mychel Robinson-Williams