1

**GOOD GUSTAFSON AUMAIS LLP**
2   J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
3   Los Angeles, CA 90064
Tel: (310) 274-4663
4   jrg@ggallp.com

5   **THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
6   100 S Commons, Ste 102
Pittsburgh PA 15212
7   Tel: (888) 412-5291
stkeeton@keetonfirm.com
8

9   *Pro hac vice

10   Counsel for Plaintiff and the Proposed Class

11
UNITED STATES DISTRICT COURT
12
NORTHERN DISTRICT OF CALIFORNIA
13

14

15   John Forrett, individually and on behalf of          CASE NO. 5:22-cv-02048-NC
those similarly situated,
16                                                          **PLAINTIFF'S OPPOSITION TO**
Plaintiff,                      **DEFENDANT'S MOTION TO DISMISS**
17                                                          **SECOND AMENDED COMPLAINT**
v.
18                                                          Date: July 5, 2023
West Thomas Partners, LLC d/b/a GFB          Time: 1:00 PM
19                                                          Courtroom: 5
The Honorable Nathanael M. Cousins
20   Defendant.

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

II.     RECENT HISTORY OF PROTEIN CASES IN THIS DISTRICT ................... 1

III.    ARGUMENT..................................................................................... 3

        A.    GFB's Use of "Protein Packed" Is Unlawful and Deceptive................. 3

              1.    "Protein Packed" as used on the Product is not puffery............ 3

              2.    GFB's use of "Protein Packed" is deceptive. ........................... 5

        B.    GFB's Omission of the DRV Is Unlawful and Deceptive...................... 7

        C.    Preemption does not bar Plaintiff's Claims. .................................... 10

              1.    Plaintiff's Claims Are Not Expressly Preempted. ..................... 11

              2.    Plaintiff's Claims Are Not Impliedly Preempted. ..................... 12

        D.    Plaintiff Has Standing for Injunctive Relief. ................................. 14

        E.    GFB's Other Arguments Equally Fail........................................... 16

              1.    Plaintiff Pleads with Requisite Specificity............................. 16

              2.    Unjust Enrichment Is Properly Pled. .................................... 16

IV.     CONCLUSION................................................................................ 17

1

2                                  **<u>TABLE OF AUTHORITIES</u>**

3 **CASES**

4 *Balser v. Hain Celestial Grp., Inc.,*

5     640 F. App'x 694 (9th Cir. 2016)............................................................. 6, 7

6 *Brazil v. Dole Food Co., Inc.,*

7     No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ..................... 4

8 *Brazil v. Dole Packaged Foods, LLC,*

9     660 F. App'x 531 (9th Cir. 2016)............................................................. 7

10 *Brown v. Natures Path Foods, Inc.,*

11     No. 21-CV-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022)...................... 15

12 *Brown v. Van's Int'l Foods, Inc.,*

13     622 F. Supp. 3d 817 (N.D. Cal. 2022)...................................................... 16

14 *Brown v. Van's Int'l Foods, Inc.,*

15     No. 22-CV-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022) ....... 12, 13, 15

16 *Bruton v. Gerber Prod. Co.,*

17     703 Fed. App'x 468 (9th Cir. 2017)......................................................... 17

18 *Bruton v. Gerber Prod. Co.,*

19     No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014)....................... 6

20 *Buckman v. Plaintiffs' Legal Committee,*

21     531 U.S. 341 (2001) ..................................................................... 12

22 *Chapman v. Skype,*

23     220 Cal. App. 4th 217 (2013) ............................................................. 5

24 *Clancy v. The Bromley Tea Co.,*

25     308 F.R.D. 564 (N.D. Cal. 2013) ......................................................... 11

26 *Coe v. Gen. Mills, Inc.,*

27     2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ............................................ 5

28

1  *Daugherty v. Am. Honda Motor Co.*,

2    144 Cal. App. 4th 824 (2006) ................................................................ 8

3  *Davidson v. Kimberly-Clark Corp.*,

4    889 F.3d 956 (9th Cir. 2018) ................................................................ 14

5  *Escobar v. Just Born Inc.*,

6    2017 WL 5125740 (C.D. Cal. June 12, 2017) ......................................... 6

7  *Fagan v. Neutrogena Corp.*,

8    2014 WL 92255 (C.D. Cal. Jan. 8, 2014) ................................................ 6

9  *Florida Lime & Avocado Growers v. Paul*,

10    373 U.S. 132 (1963) ............................................................................ 10

11  *Forrett v. Gourmet Nut Inc.*,

12    No. 22-CV-02045-BLF, 2023 WL 3749556 (N.D. Cal. June 1, 2023) ............. 2, 3, 14

13  *Forrett v. Gourmet Nut, Inc.*,

14    No. 22-CV-02045-BLF, 2022 WL 6768217 (N.D. Cal. Oct. 11, 2022) ....................... 2

15  *Guerra v. KIND, LLC*,

16    No. 22-CV-06654-RS, 2023 WL 3436093 (N.D. Cal. May 11, 2023) ................. 13, 16

17  *Gustavson v. Wrigley Sales Co.*,

18    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................ 10, 11

19  *Hadley v. Kellogg Sales Co.*,

20    273 F. Supp. 3d 1052 (N.D. Cal. 2017) .................................................. 5

21  *Holk v. Snapple Beverage Corp.*,

22    575 F.3d 329 (3d Cir. 2009) .............................................................. 11

23  *Johnson-Jack v. Health-Ade LLC*,

24    587 F. Supp. 3d 957 (N.D. Cal. 2022) .................................................... 4

25  *Jones v. Nutiva, Inc.*,

26    2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) .......................................... 5

27  *Jou v. Kimberly-Clark Corp.*,

28    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................................... 6

*Klammer v. Mondelez Int'l, Inc.*,

    No. 22-CV-02046-JSW, 2023 WL 105095 (N.D. Cal. Jan. 4, 2023) ........................ 3

*Lesh v. DS Nats., LLC*,

    No. 22-CV-01036-HSG, 2023 WL 2530986 (N.D. Cal. Mar. 15, 2023) ................... 13

*Medtronic, Inc. v. Lohr*,

    518 U.S. 470 (1996) ................................................................................................ 10

*Moore, v. GlaxoSmithKline*,

    No. 20-CV-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ..................... 15

*Nacarino v. Kashi Co.*,

    584 F. Supp. 3d 806 (N.D. Cal. 2022) ...................................................................... 2

*Newcal Indus., Inc. v. Ikon Office Solution*,

    513 F.3d 1038 (9th Cir. 2008) ................................................................................. 4

*Patriotic Veterans, Inc. v. Indiana*,

    736 F.3d 1041 (7th Cir. 2013) ............................................................................... 11

*Perez v. Nidek Co.*,

    711 F.3d 1109 (9th Cir. 2013) ............................................................................... 12

*Pino v. Birch Benders, LLC*,

    No. 22-CV-02194-TSH, 2022 WL 4913320 (N.D. Cal. Oct. 3, 2022) ........................ 2

*Plumley v. Massachusetts*,

    155 U.S. 461 (1894) ......................................................................................... 11, 12

*POM Wonderful LLC v. Coca-Cola Co.*,

    573 U.S. 102 (2014) ............................................................................................... 12

*Prescott v. Bayer HealthCare LLC*,

    No. 20-cv-00102-NC, 2020 WL 4430958 (N.D. Cal. July 31, 2020) ........................ 15

*Rausch v. Flatout, Inc.*,

    No. 22-CV-04157-VC, 2023 WL 2401452 (N.D. Cal. Mar. 8, 2023) ................ 2, 8, 13

*Reid v. Johnson & Johnson*,

    780 F.3d 952 (9th Cir. 2015) ................................................................................... 9

*Roffman v. Perfect Bar, LLC*,

No. 22-CV-02479-JSC, 2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ....................... 2

*Salazar v. Honest Tea, Inc.*,

2015 WL 75223 (E.D. Cal. Jan. 6, 2015) .............................................................. 3, 4

*Shank v. Presidio Brands, Inc.*,

No. 17-CV-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018).................... 15

*Soo Line R.R. Co. v. Werner Enterprises*,

825 F.3d 413 (8th Cir. 2016) .................................................................................. 10

*United States v. Jones*,

No. 20-10090, 2021 WL 5984901 (9th Cir. Dec. 16, 2021)...................................... 16

*Vanlaningham v. Campbell Soup Co.*,

492 F. Supp. 3d 803 (S.D. Ill. 2020)......................................................................... 11

*Vassigh v. Bai Brands LLC*,

No. 14-CV-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015)................ 4, 12

*Wallace v. SharkNinja Operating, LLC*,

No. 18-CV-05221-BLF, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020)..................... 17

*Williams v. Gerber Prod. Co.*,

552 F.3d 934 (9th Cir. 2008).............................................................................. 1, 6

*Wilson v. Hewlett-Packard Co.*,

668 F.3d 1136 (9th Cir. 2012) ................................................................................ 8

**RULES**

Fed. R. Civ. P. 8 ........................................................................................................ 15

**REGULATIONS**

21 C.F.R. § 101.13................................................................................................... 13

21 C.F.R. § 101.14....................................................................................................... 6

21 C.F.R. § 101.54................................................................................................... 12

21 C.F.R. § 101.9 .................................................................................................12, 13

**OTHER AUTHORITIES**

56 Fed. Reg. 60372 (1991) .................................................................................. 4, 13

58 Fed. Reg. 58 FR 2302-01 (1993)......................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOD GUSTAFSON AUMAIS LLP**

## I.      INTRODUCTION

This is a simple case. Defendant ("GFB") exploits consumers' preference for products containing protein by representing to consumers that its Product is "PROTEIN PACKED" and contains specific amounts of protein. Reasonable consumers, including Plaintiff, interpret the entire label and these representations to mean that the Product is a high protein snack or, at a minimum, provides a good source of protein and contains the specific amount of protein in a form the body can use. Instead of the snack containing "packed" levels of protein in specified amounts the body can use that Defendant represents, consumers receive a Product that contains deficient levels of quality protein. Furthering its deception, GFB unlawfully and deceptively fails to include the Daily Recommended Value ("DRV") on the Product's packaging.

This is a simple case, and "[t]he facts of this case…do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Defendant presents multiple arguments seeking dismissal, but ultimately a single question drives the outcome. Under the standard of review for this motion, the only way Defendant's Motion can be granted is if the Court holds that no reasonable consumer could be deceived by GFB's numerous protein claims and its failure to include the DRV for protein. If the Court believes a reasonable consumer **could** be misled:

- Plaintiffs' UCL claims survive and the Motion is Denied;
- Plaintiffs' FAL claims survive and the Motion is Denied;
- Plaintiffs' CLRA claims survive and the Motion is Denied; and
- Plaintiffs' unjust enrichment claim survives and the Motion is Denied.

## II.      RECENT HISTORY OF PROTEIN CASES IN THIS DISTRICT

Over the past year, this District has seen an evolution of law in protein-focused cases. In the earlier stages, courts tried to determine the proper borders. In hindsight, many judges in this District have determined that their earlier opinions were too restrictive and incorrectly dismissed

– 1 –

cases that had viable claims.

For example, in *Nacarino*, Judge Chabbria stated that it was not misleading for a company to present the unadjusted protein content amount without including the DRV. *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 810 (N.D. Cal. 2022). A year later, Judge Chabbria stated, "But that part of Nacarino was (with apologies) wrong." *Rausch v. Flatout, Inc.*, No. 22-CV-04157-VC, 2023 WL 2401452, at *5 (N.D. Cal. Mar. 8, 2023) ("The better reading of the FDA's regulations is that prominently advertising a product's protein quantity outside of the nutrition facts panel is misleading (within the meaning of the Food, Drug, and Cosmetic Act and the FDA's regulations), if the manufacturer doesn't include the quality-adjusted percent in the nutrition facts panel.").

Additionally, in *Gourmet Nut I*, Judge Freeman  ruled that "protein packed" was puffery and could not form a nutrient content claim. *Forrett v. Gourmet Nut, Inc.*, No. 22-CV-02045-BLF, 2022 WL 6768217, at *3 (N.D. Cal. Oct. 11, 2022) ("*Gourmet Nut I*"). Seven months later, Judge Freeman's view shifted and the court rejected the earlier interpretation by stating that "protein packed" is a nutrient content claim. *Forrett v. Gourmet Nut Inc.*, No. 22-CV-02045-BLF, 2023 WL 3749556, at *5 (N.D. Cal. June 1, 2023) ("The Court therefore determines that "Protein Packed" is a nutrient content claim that characterizes the level of protein in the food.") ("*Gourmet Nut II*").

Some of these earlier opinions have "forked" the law in an unintended direction upon later review. As a result, there are now long chains of cases that were dismissed based on logic that was rejected by its original creators. For example, the early logic of *Nacarino* was adopted by Judge Corley in dismissing plaintiff's claims in *Perfect Bar*. *Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714, at *7 (N.D. Cal. Sept. 2, 2022). Then, Judge Hixson adopted both *Nacarino* and *Perfect Bar* to reject similar claims in *Pino*. *Pino v. Birch Benders, LLC*, No. 22-CV-02194-TSH, 2022 WL 4913320, at *4 (N.D. Cal. Oct. 3, 2022).

– 2 –

Plaintiff's Opposition to Defendant's Motion to Dismiss Second Amended Complaint
*Forrett v. West Thomas Partners, LLC*, No. 4: 5:22-cv-02048-NC

**GOOD GUSTAFSON AUMAIS LLP**

An additional example is shown in *Klammer*[1] where Judge White adopted the "protein packed" interpretation from *Gourmet Nut I. Klammer v. Mondelez Int'l, Inc.*, No. 22-CV-02046-JSW, 2023 WL 105095, at *4 (N.D. Cal. Jan. 4, 2023) ("'packed' was not an FDA-regulated term.). Additionally, this Court relied on *Gourmet Nut I* in dismissing Plaintiff's "protein packed" based claims in its order granting GFB's motion to dismiss ("The Court in *Forrett v. Gourmet Nut* similarly dismissed "protein packed" fraud claims at the motion to dismiss stage.").

The law in this area has moved incredibly fast in the past year and the concrete has finally dried. Plaintiff respectfully asks the Court to review the Second Amended Complaint without the taint of extinct cases and their resulting chains of law. In other words, Plaintiff respectfully asks this Court to go back to the fork in the road and, in hindsight with the benefit of evolved law, travel the correct, finalized path when it reviews the Second Amended Complaint.

## III.    ARGUMENT

### A.    GFB's Use of "Protein Packed" Is Unlawful and Deceptive.

GFB's claims that "Protein Packed" is puffery and not plausibly deceptive. As described herein, its analysis is incorrect for both arguments.

#### 1.    "Protein Packed" as used on the Product is not puffery.

"Protein Packed" is not puffery. Rather, it is a nutrient content claim concerning the protein content of the Product. *See Gourmet Nut II*, 2023 WL 3749556, at *5. ("'Protein Packed' is a nutrient content claim"); *Salazar v. Honest Tea, Inc.*, 2015 WL 75223, at *5 (E.D. Cal. Jan. 6, 2015) (finding "packed with [an antioxidant]" to be a nutrient content claim). In reaching this conclusion, the *Salazar* court relied upon FDA warning letters concerning the use of "packed with" which classified the phrase as a nutrient content claim. *Id.* at *4 (the FDA classified 'packed with

---

[1] In its discussion of *Klammer*, GFB emphasizes that Judge White failed to cite *Rausch*. Def's Brief, p. 9. While true, it was impossible for Judge White to consider *Rausch* because it was filed three months after Judge White's opinion in *Klammer*.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

protective FLAVONOID ANTIOXIDANTS' as a nutrient content claim). In reaching its decision, the FDA concluded that "[t]he term 'packed with' characterizes the level of flavonoid antioxidants in the product." *Id.* Other courts have similarly held that "[nutrient] packed" and "packed with [nutrient]" are nutrient content claims. *Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *7 (N.D. Cal. July 13, 2015) ("the Court finds that the statements that [products] are 'Antioxidant Packed' or are an 'Antioxidant Packed Beverage'—which plausibly imply a particular level of antioxidants contained in the product—constitute nutrient content claims and are thus sufficient to survive Bai's motion to dismiss."); *Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *3 (N.D. Cal. Sept. 23, 2013) (holding that "Packed with Antioxidants" is a nutrient content claim). "Protein Packed" is not puffery.

Puffery requires a two-step analysis. "[T]he principal issue when evaluating claimed puffery is whether a consumer would rely on the challenged term. Whether a term is easily defined or measured is secondary and merely informs the reliance analysis." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 968 (N.D. Cal. 2022). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). Here, GFB's protein-focused representations are intended to induce consumer reliance. GFB places "Protein Packed" in capital letters on the front of the Product. The FDA has always considered nutrient content claims – like "protein packed" – to be "a marketing activity." 56 Fed. Reg. 60372 (1991) (they are a "marketing activity rather than as a tool for educating or assisting consumers in planning a healthy diet."). GFB uses nutrient content claims as a marketing tool to induce consumer reliance. A review of the first and "principal" factor cements that "protein packed" is not puffery.

Shifting focus to the secondary factor fails to change this conclusion. While "packed" may not have an easy definition, its combination with a nutrient creates a nutrient content claim. Words like "nutritious," "wholesome," "best choice," and "good for you," while not easily defined, are

– 4 –

GOOD GUSTAFSON AUMAIS LLP

not puffery and can be implied nutrient content claims in some circumstances. See *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1078 (N.D. Cal. 2017).

Even if a statement could be deemed puffery in isolation, courts review the packaging and deceptive context as a whole. Each statement contributes to the deceptive context of the packaging as a whole. *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) ("better than butter" is actionable in context of the entire label.). For example, "'nutritious' has been held to be actionable because it contributed 'to the deceptive context of the product' that was created by the more-specific allegations of falsity. *Hadley*, 273 F. Supp. 3d 1052, 1089. While a phrase like "great start" might be viewed as puffery in isolation, it has been ruled actionable based on the deceptive context of the product as a whole. *Coe v. Gen. Mills, Inc.*, 2016 WL 4208287, at *6 (N.D. Cal. Aug. 10, 2016). Here, while "packed" could be seen as puffery in isolation, when it is combined with "protein" and supported by numerous references to protein, it is no longer puffery.

Viewing the Product's packaging as a whole in the proper context – encompassed by nutrient claims concerning protein – represents to consumers that the Product is provides excellent or good sources of protein.

### 2.    GFB's use of "Protein Packed" is deceptive.

GFB's numerous "protein packed" representations on the Product are deceptive.

As GFB correctly states, Plaintiff's consumer fraud claims are analyzed under the "reasonable consumer" test. The reasonable consumer is "neither the most vigilant and suspicious of advertising claims nor the most unwary or unsophisticated, but instead is the ordinary consumer with the target population." *Chapman v. Skype*, 220 Cal. App. 4th 217, 226 (2013). This is an objective standard. A plaintiff asserting violations based on consumer fraud need "only to show that members of the public are likely to be deceived. *Chapman*, 220 Cal. App. 4th at 226. At the motion to dismiss stage, "the relevant inquiry is not what the consumer actually believes, but whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer could

believe." *Escobar v. Just Born Inc.*, 2017 WL 5125740, at *10 n.5 (C.D. Cal. June 12, 2017); *see also Williams*, 552 F.3d at 940 (reversing the district court's dismissal of the plaintiff's complaint and finding that, "given the opportunity, [the plaintiffs] have stated a claim and could plausibly prove that a reasonable consumer would be deceived by the Snacks packaging").

Courts have also clarified that the reasonable consumer test must be evaluated from the vantage of a reasonable consumer, not the vantage of the defendant. *See Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) (Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation."). Thus, whether reasonable consumers would adopt a defendant's interpretation or plaintiff's interpretation should not be resolved on the pleadings. *See id.*; *see also Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) ("Whether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion.); *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *10 (N.D. Cal. Jan. 15, 2014).

GFB argues that the Court can rule, as a matter of law, that no reasonable consumer would be deceived or misled by its' protein claims. The Ninth Circuit has at least twice reversed dismissal on the pleadings where the defendants made similar arguments in food labeling cases. *See Williams*, 552 F.3d at 938; *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016). In those decisions, the Ninth Circuit held that "[w]hether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury," and that it is only "the rare situation" in which that issue can be resolved on the pleadings. *Balser*, 640 F. App'x at

– 6 –

GOOD GUSTAFSON AUMAIS LLP

696; *Williams*, 552 F.3d at 938- 39; *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard). GFB asks this Court to make the same reversible error made by the district courts in *Williams* and *Balser*. GFB's motion should be denied.

"Protein Packed" is an unauthorized nutrient content claim. *See* SAC ¶56. This renders the Product misbranded. Further, the use of this nutrient content claim is deceptive because it causes reasonable consumers to emphasize the protein content and leads them to believe that the Product is a "high protein" snack, provides a "good source of," or even "contains" protein. However, despite making this representation, the Product fails to provide sufficient levels of protein to meet any of these levels. While the reasonable consumer's interpretation of "protein packed" is a question of fact that cannot be resolved at this stage, even if the Court were to conclude that "protein packed" means "contains protein," the Product would still be deceptive.

Without including the mandatory DRV, the consumer cannot resolve GFB's deception. In determining thresholds for protein-focused nutrient content claims, the FDA has never focused on raw protein *quantity*. Instead, the FDA has always been concerned with protein *quality*. Simply, the focus is on the DRV. *See* 21 C.F.R. § 101.54(b) (requiring "20 percent or more of the RDI or the DRV" for "high" claims); 21 C.F.R. § 101.54(c) (requiring "10 to 19 percent of the RDI or the DRV" for "good source" claims). GFB's "protein packed" representation is deceptive because it fails to contain sufficient amounts of protein, and this deception is further aggravated by GFB's failure to include the DRV for protein.

## B.    GFB's Omission of the DRV Is Unlawful and Deceptive.

GFB's use of multiple nutrient content claims concerning protein, and its failure to include the DRV is also deceptive. The DRV "shall be given if a protein claim is made for the product…" 21 C.F.R. § 101.9(c)(7). "[T]he FDA's regulations are best understood as reflecting a

– 7 –

determination that when a manufacturer emphasizes a product's protein content, that statement is misleading without including information about the product's protein quality on the nutrition facts panel." *Rausch*, 2023 WL 2401452, at *5 (N.D. Cal. Mar. 8, 2023). This deception plausibly misleads  reasonable consumers. *Id.* at *6 ("Rausch has plausibly alleged that a statement of protein quantity outside of a nutrition facts panel is misleading…if the statement is unaccompanied by the quality-adjusted percent daily value."). This is consistent with California law because a fraudulent omission is actionable if the omitted facts are "contrary to a representation made by the defendant, or [the] omission [is] of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). Here, both are present.

First, GFB's representation that the Product contains a specific amount of protein (4 grams) is contrary to the fact that the Product fails to include 4 grams of protein that the body can use. This deception is hidden by GFB's failure to disclose the DRV for protein. Additionally, GFB's use of the unauthorized nutrient content claim "protein packed" is contrary to the fact that it fails to provide protein levels of a good or excellent source of protein is masked by the failure to include the DRV. Second, GFB was obligated to disclose the DRV because it makes protein claims throughout the Product's packaging.

Additionally, GFB "had exclusive knowledge of material facts not known to the plaintiff" because consumers are unaware of the Product's formula and the PDCAAS calculation thereof. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-42 (9th Cir. 2012). In other words, the only way for a reasonable consumer to know the Product's DRV is if GFB provides it on the Product's packaging.

The FDA has always considered nutrient content claims to be "a marketing activity," the purpose of which is to advertise a specific product as a "significant source" of the relevant nutrient. *See* 56 Fed. Reg. 60372 (1991). The FDA has long been suspicious of nutrient content claims and has repeatedly stated that such claims can be misleading, so the rules that govern them are far more

GOOD GUSTAFSON AUMAIS LLP

restrictive. Indeed, "the general rule is that 'nutrient content claims' are not permitted on food labels" and must instead satisfy all of the requirements of § 101.13 before being authorized to appear at all. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). FDA regulations specifically condition the ability to make a nutrient content claim on compliance with the rules governing the NFP. Section 101.9(c)(7)(i), in particular, sets forth special rules for the NFP when manufacturers make a protein claim outside the NFP. It provides that "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . shall be given if a protein claim is made for the product . . ." 21 C.F.R. 101.9(c)(7)(i). If a manufacturer does not want to perform PDCAAS and provide a statement of the corrected amount of protein per serving in the NFP, then it shall not make any protein claims.

The regulation governing nutrient content claims, Section 101.13, also makes this plain. 21 C.F.R. § 101.13. Section 101.13(n) provides that "[n]utrition labeling in accordance with § 101.9 . . . shall be provided for any food for which a nutrient content claim is made" and § 101.13(b) states "a nutrient content claim[] may not be made on the label . . . unless the claim is made in accordance with this regulation [i.e., § 101.13] . . . ." In other words, a manufacturer may not make any protein nutrient content claims on the front labels of their products unless they have complied with the requirements for protein labeling in the nutrition facts panel pursuant to section 101.9(c)(7). Indeed, the FDA made clear when promulgating § 101.13(n) that it means that a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, provided that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 58 FR 2302-01 (1993).

GFB's use of protein claims, while failing to include the required statement of the corrected amount of protein per serving in the NFP calculated using the PDCAAS method and expressed as a %DV, is misleading. Had GFB complied with the law, the statement of the corrected amount of

– 9 –

GOOD GUSTAFSON AUMAIS LLP

protein expressed as a %DV would have revealed that the Products provide significantly less of the daily value of protein than high quality protein products with comparable protein quantities. Consumers lack the meaningful ability to test or independently ascertain the truthfulness of GFB's food labeling claims, especially at the point of sale. *See* SAC ¶ 79.

GFB's duty not to mislead consumers about the quality or nutritional value of the protein in its products does not stem from either the FDCA or California's Sherman Law. Instead, that duty stems from traditional California prohibitions on misleading and deceptive advertising (including prohibitions on fraudulent omissions) that long predate the FDCA or Sherman Law, including the UCL's fraud prong, the CLRA, and the FAL. In making numerous protein-focused claims and failing to include the DRV for protein, GFB violates this duty.

### C.    Preemption Does Not Bar Plaintiff's Claims.

GFB attacks the Second Amended Complaint by arguing that the claims are barred by express and implied preemption. Both arguments fail.

"When analyzing the scope of a preemption statute, a court's analysis must 'start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The states' power to protect its citizens from deception is a traditional state police power. In *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 146 (1963), the High Court recognized that "neither logic nor precedent" leads to a distinction between the state's ability to protect the health and safety of its citizens and the state's ability to "prevent the deception of consumers." Additionally, "[w]hen determining whether federal law preempts state-law causes of action, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Soo Line R.R. Co. v. Werner Enterprises*, 825 F.3d 413, 420 (8th Cir. 2016). In other words, there is a

"presumption against preemption." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013).  For over a century, states have been allowed to protect their citizens from deceptive practices in the food sector. *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control … it is the protection of the people against fraud and deception in the sale of food products."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334–35 (3d Cir. 2009). Further, "[p]reemption doctrine should not be lightly applied, and the burden is on the party seeking preemption to present a showing of conflict strong enough to overcome the presumption that state and local regulations can coexist with federal regulation." *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 806 (S.D. Ill. 2020) (internal citation omitted). GFB does not make this showing and fails to meet its burden. As outlined below, Plaintiff's claims are not barred by express or implied preemption.

### 1.     Plaintiff's Claims Are Not Expressly Preempted.

Because GFB fails to include the DRV for protein, all protein-focused nutrient content claims are unauthorized under the FDCA. As described herein, they are also deceptive. Simply, there is no conflict with federal law, and as a result, there is no express preemption.

Additionally, Plaintiff's claims concerning "protein packed" are not expressly preempted. While the words "high," "excellent source of," "good source," or "rich in" are not present on the packaging, that is not the only focus of the preemption analysis. Terms not defined by the FDA can act as nutrient content claims. *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 575 (N.D. Cal. 2013). Synonyms of the FDA-defined terms can form the basis of nutrient content claim based causes of action. *Gustavson*, 961 F. Supp. 2d at 1120 (N.D. Cal. 2013) (rejecting defendant's preemption argument and finding "natural source" and "found" to be synonymous with "good source," "contains," or "provides"). In other words, "[a] defendant cannot escape liability simply because it uses a synonym…." *Vassigh*, 2015 WL 4238886, at *7 (discussing multiple synonyms including "packed with"). "The touchstone inquiry is whether the statement either expressly or

GOOD GUSTAFSON AUMAIS LLP

implicitly characterizes the level of a nutrient in the product." *Id.* "Protein packed" is an unauthorized nutrient content claim that leads consumers to believe that the Product is a "high protein" snack or provides a "good source of" protein. SAC ¶56. The Product fails to meet either.

### 2.   Plaintiff's Claims Are Not Impliedly Preempted.

*Buckman* does not apply in this case because Plaintiff "is suing for conduct that violates the FDCA, but not because the conduct violates the FDCA." *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at \*7 (N.D. Cal. May 10, 2022) (citing *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013)). This is not a novel conclusion because "courts in this District ... routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh*, 2015 WL 4238886, at \*4 (collecting authorities).The claims in *Buckman* were based on fraudulent representations made to the FDA which ultimately allowed bone screws to get market clearance. *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341, 343 (2001). Unlike *Buckman*, Plaintiff does not bring claims based on a "fraud-on-the-FDA" theory. Instead, Plaintiff brings his claims based on violations of "state and common law." SAC ¶60. This is far from coverage under *Buckman*, and it makes sense because the FDA – unlike the USDA – does not preapprove or preauthorize food labels. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 116 (2014) (" Unlike other types of labels regulated by the FDA, such as drug labels, *see* 21 U.S.C. § 355(d), it would appear the FDA does not preapprove food and beverage labels under its regulation….").

Applying *Buckman* preemption to deceptive food labels sweeps too broadly and infringes upon California's control over "the protection of the people against fraud and deception in the sale of food products." *Plumley*, 155 U.S. 461, 472. It is even more important to allow California to protect its people when Congress "left the door open" for states to adopt identical laws. In other words, if Congress intended for preemption to sweep so broadly as to infringe upon identical laws passed by individual states, it would have included that language (as it did for conflicting laws

– 12 –

GOOD GUSTAFSON AUMAIS LLP

under the FDCA). As Judge Orrick summarized in *Brown*:

> As noted above, when Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements. 21 U.S.C. § 343–1(a). But Congress did not attempt to completely preempt state laws regarding the marketing of food products. It specifically anticipated states enacting their own identical laws. *See In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008) ("Congress clearly stated its intent to allow states to establish their own identical laws...."). State laws are only preempted if they are not "equal to, or substantially identical to, requirements imposed by or under the [FDCA]." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496–97 (1996); *see also McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015) ("*Buckman* ... left the door open to state-law claims 'parallel' to federal requirements."). California complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement. "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act ... shall be the food regulations of this state." Cal. Health & Safety Code § 110100(a).

*Brown*, 2022 WL 1471454, at *7. Numerous courts in this District have adopted Judge Orrick's analysis from *Brown* and held that *Buckman* does not apply in cases like the one *sub judice*. *Rausch*, 2023 WL 2401452, at *3("For the reasons explained by Judge Orrick…the claims are not impliedly preempted."); *Lesh v. DS Nats., LLC*, No. 22-CV-01036-HSG, 2023 WL 2530986, at *4n.2 (N.D. Cal. Mar. 15, 2023) ("*Buckman* preemption does not apply in cases like this where the plaintiff "is suing because the protein statements at issue are allegedly misleading under California law, not because the protein statements allegedly violate FDA regulations."). Even in courts that have declined to follow Judge Orrick's analysis, claims similar to Plaintiff's have survived. *Guerra v. KIND, LLC*, No. 22-CV-06654-RS, 2023 WL 3436093, at *8 (N.D. Cal. May 11, 2023) ("Yet even if the PDCAAS, the %DV, and specific framework described in Plaintiff's suit are entirely constructs of the FDA, it is again at least plausible that Plaintiff's underlying theory would survive if the FDCA were done away with altogether. Though "[n]either the %DV nor the daily value has an analog in common law," the concept that consumers could sue when falsely promised more than they were getting harkens back to time immemorial.").

Plaintiff's claims are not restrained under *Buckman*, but even if analyzed under GFB's

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP

sweeping view of *Buckman*, the claims would still survive.

### D.     Plaintiff Has Standing for Injunctive Relief.

As a preliminary matter, GFB attempts to incorporate the Rader Declaration into its injunctive relief argument, but this attempt should be rejected by the Court. The Declaration suffers from deficiencies. For example, it fails to indicate when – if ever - any of these labels were put into the marketplace. All that is shown in the Declaration is sets of draft images of product labels that are "kept in the ordinary course of business." Simply, they may never have been used for anything other than testing or review.

Plaintiff would purchase the Products again if they were "reformulated to ensure they provide, in a usable form, the amounts of quality protein that are represented on the labels, or their labels are changed to provide non-misleading information…." SAC ¶ 92. This establishes sufficient standing for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Identical language was recently found to satisfy *Davidson* and establish standing for injunctive relief. *Gourmet Nut II*, 2023 WL 3749556, at *9 ("This allegation is sufficient to allege standing under *Davidson*. Plaintiff therefore has standing to seek injunctive relief.").Because protein quality varies greatly based on composition of the ingredients and product formulas routinely change, Plaintiff faces future harm as outlined in the Second Amended Complaint. SAC ¶ 92. Plaintiff and other reasonable consumers are not expected to know the protein quality of each ingredient nor are they privy to the specific concentrations present in any food product.[2] *See Prescott v. Bayer*

---

[2] This information is only known to food companies that manufacture, market, and distribute the food products, like Defendant, and many times these formulas are protected as proprietary and

*HealthCare LLC*, No. 20-cv-00102-NC, 2020 WL 4430958, at *7 (N.D. Cal. July 31, 2020) ("[A]bsent an encyclopedic knowledge of sunscreen active ingredients, Plaintiffs may not be able to truly know whether a sunscreen is truly 'mineral-based.'").

In reviewing GFB's argument, "[s]everal courts have rejected similar arguments…" and found that consumers similar to Mr. Forrett had standing under *Davidson*. *Moore, v. GlaxoSmithKline*, No. 20-CV-09077-JSW, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) (consumer had standing for injunctive relief "even if Plaintiff is now aware of some synthetic ingredients, it is plausible that she would still be unable to rely on the Products' labeling in the future given her allegations that she cannot differentiate between synthetic and natural ingredients."); *Shank v. Presidio Brands*, No. 17-CV-00232-DMR, 2018 WL 1948830, at *3 (N.D. Cal. Apr. 25, 2018) (rejecting similar argument where plaintiff "would like to buy [Defendant's] accused products in the future if they were reformulated to contain all-natural ingredients….").

GFB's interpretation of "reformulated" is only a limited reading of the word. "'[R]eformulated' may mean that the Products are relabeled, not that the ingredient composition is altered. In this light, [Plaintiff's] allegation satisfies *Davidson*'s first example of future harm. Because I can fairly interpret the complaint as alleging that [Plaintiff] would purchase the products again in the future if they were not misleadingly labeled, [Plaintiff] has sufficiently alleged standing to seek injunctive relief." *Brown*, 2022 WL 1471454, at *11. *See also Brown v. Natures Path Foods*, No. 21-CV-05132-HSG, 2022 WL 717816, at *6 (N.D. Cal. Mar. 10, 2022) (finding standing for injunctive relief with similar allegations). Here, Plaintiff has pled injunctive relief consistent with the requirements of *Davidson* and numerous courts within this District. Consumers like Plaintiff are not expected to have an encyclopedic knowledge of each ingredient's PDCAAS nor are they privy to the specific formulas of the Products. *See* SAC ¶ 71.

---

confidential information.

GOOD GUSTAFSON AUMAIS LLP

Plaintiff's request for injunctive relief is consistent with Ninth Circuit precedent in *Davidson* and with numerous courts in this District. Therefore, GFB's request should be denied.

**E.      GFB's Other Arguments Equally Fail**

**1.      Plaintiff pleads with requisite specificity.**

In an ill-planned attack on the Complaint, GFB plays a game of "whataboutism"[3] by gathering an assortment of information missing from the Complaint without specifically addressing Rule 9(b)'s requirements. "Rule 9(b) requires a complaint must allege the "who, what, when, where, and how" of the misrepresentations." *Brown v. Van's Int'l Foods, Inc.*, 622 F. Supp. 3d 817, 829 (N.D. Cal. 2022). Despite GFB's contention, "why" is not required under Rule 9(b).[4] Regardless, GFB attempts to stage numbers (like "a difference of just 1.6%") instead of focusing on the true determinant (the consumer receives 20% less protein than claimed).[5] Nor do competing products need to be specifically identified to satisfy Rule 9(b).

**2.      Unjust enrichment is properly pled.**

Plaintiff adequately states a claim for unjust enrichment. Defendant contends that unjust enrichment cannot be brought as an independent claim.[6] "But the Ninth Circuit has recognized that California law does indeed permit an independent claim for unjust enrichment." *Carvalho v. HP, Inc.*, No. 21-CV-08015-BLF, 2022 WL 2290595, at *6 (N.D. Cal. June 24, 2022). While for a period of time there was a debate on this issue, "in 2017, the Ninth Circuit recognized that the California Supreme Court later 'clarified California law, allowing an independent claim for unjust enrichment proceed.'" *Wallace v. SharkNinja Operating, LLC*, No. 18-CV-05221-BLF, 2020 WL

---

[3] *United States v. Jones*, No. 20-10090, 2021 WL 5984901, at *4 (9th Cir. Dec. 16, 2021).

[4] This is shown by its own citation to *Vess*.

[5] To the extent that the Court infers a required "why," Judge Seeborg described the "why" in *Guerra*. 2023 WL 3436093, at *8 (N.D. Cal. May 11, 2023) ("[T]he concept that consumers could sue when falsely promised more than they were getting harkens back to time immemorial.").

[6] GFB appears to attack the unjust enrichment claim. Def's Brief, p. 4. Out of an abundance of caution, Plaintiff defends the unjust enrichment claim.

– 16 –

Plaintiff's Opposition to Defendant's Motion to Dismiss Second Amended Complaint
*Forrett v. West Thomas Partners, LLC*, No. 4: 5:22-cv-02048-NC

GOOD GUSTAFSON AUMAIS LLP

1139649, at *13 (N.D. Cal. Mar. 9, 2020) (quoting *Bruton v. Gerber Prod. Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017)).

## IV.     CONCLUSION

Plaintiff respectfully asks that the Court deny Defendant's Motion to Dismiss the Second Amended Complaint. To the extent that the Court determines any claim is deficient, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15.

Dated: June 14, 2023

Respectfully submitted,

THE KEETON FIRM LLC
/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.*
stkeeton@keetonfirm.com
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Tel.: (888) 412-5291
*Pro hac vice*

GOOD GUSTAFSON AUMAIS LLP
J. Ryan Gustafson
jrg@ggallp.com
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel.: (310) 274-4663

*Counsel for Plaintiff and the Proposed Class*

GOOD GUSTAFSON AUMAIS LLP

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of June, 2023, a true and correct copy of this Memorandum was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

_/s/ Steffan T. Keeton

Steffan T. Keeton, Esq.