# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI KLAMMER,<br><br>  Plaintiff,<br><br>  v.<br><br>MONDELEZ INTERNATIONAL, INC.,<br><br>  Defendant. | Case No. 22-cv-02046-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 29 |

Now before the Court for consideration is the motion to dismiss the second amended complaint ("SAC") filed by Defendant Mondelez International, Inc. ("Defendant" or "MDLZ"). The Court has reviewed the parties' papers, relevant legal authority, and the record in this case and finds the matter suitable for disposition without oral argument.[1] *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS, in part, and DENIES, in part, Defendant's motion.

## BACKGROUND

This case arises out of the labeling of MDLZ's Enjoy Life Lentil Chips (the "Product").[2] Plaintiff alleges that the Product is labeled as "high protein" and "protein-packed" despite the fact that the Product is not a high protein snack or a good source of protein. (SAC ¶¶ 4-5.) Plaintiff further alleges that MDLZ perpetuates the deception that the Product is high protein by making protein claims on the front and back label while omitting the corrected amount of protein expressed as a percent daily value in the nutrition facts panel on the Product's label, as required by 21 C.F.R. §§ 101.9(c) and 101.13(b). (*Id.* ¶¶ 6-7.)

---

[1] The Court has also reviewed and considered the statements of recent decision submitted by Plaintiff and MDLZ. (*See* Dkt. Nos. 38, 39.)

[2] Plaintiff challenges the following Enjoy Life Lentil Chip Product varieties: Sea Salt, Garlic & Parmesan, Dill & Sour Cream, Thai Chili Lime, and Margherita Pizza. (SAC n.1.)

Plaintiff's prior complaint, which the Court dismissed with leave to amend, was focused on his theory of consumer deception based on the allegedly misleading "high protein" and "protein-packed" statements on the Product's label. (*See* Dkt. No. 25, ("1/4/2023 Order").) Plaintiff again pursues this theory of deception, but he has shifted the focus of his complaint to his omission-based claim: that the labeling of the Product is unlawful and deceptive based on the omission of the corrected amount of protein in the nutrition facts panel.

Plaintiff alleges that not all proteins are the same in their ability to meet human nutritional requirements so a statement of the number of grams of protein in a food product may not present a complete picture to a consumer about that food product's ability to meet nutritional needs. (SAC ¶ 7.) As a result, the FDA prohibits manufacturers from advertising or promoting their products with a protein claim unless they (1) calculate the "corrected amount of protein per serving" based on the quality of the product's protein[3]; and (2) provide a "statement of the corrected amount of protein per serving" in the nutrition facts panel "expressed as" a percent daily value ("PDV") and placed immediately adjacent to the statement of protein quantity. (*Id.* ¶ 9.)

Plaintiff alleges that MDLZ "failed to provide in the [nutrition facts panel] a statement of the corrected amount of protein per serving calculated according to the PDCAAS methodology and expressed as a PDV." (*Id.* ¶ 10.) Accordingly, Plaintiff alleges that the protein claims on the front and back of the package are unlawful because MDLZ failed to comply with the regulatory requirements for making a protein claim pursuant to 21 C.F.R. § 101.9(c)(7)(i), 101.13(b), (n). (*Id.*)

Plaintiff further alleges that in addition to being unlawful under 21 C.FR. §§ 101.9 and 101.13, the protein claims on the front and back of the package, while omitting the statement of the corrected amount of protein per serving expressed as a PDV in the nutrition facts panel, are likely to mislead a reasonable consumer because consumers reasonably expect that the Product will provide nutritionally the amount of protein claimed on the front of the package and stated in the protein quantity section of the nutrition facts panel. (*Id.* ¶ 11.) Plaintiff alleges the Product, in

---

[3] The FDA required method for measuring protein quality is called the "Protein Digestibility Corrected Amino Acid Score" or PDCAAS. (SAC ¶ 8.)

2

fact, contains low quality proteins, and had Defendant included a statement of the corrected amount of protein per serving in the nutrition facts panel, as required, it would have revealed that the Product contains low quality proteins. (*Id.*)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

### A. Applicable Legal Standard.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *Id.* The Court may review matters that are in the public record, including pleadings, orders, and other papers filed in court. *See id.*

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246-47.

**B.     Whether the Omission of the PDV is Unlawful.**

Plaintiff alleges MDLZ failed to provide a statement of the corrected amount of protein per serving expressed as a PDV in the nutrition facts panel. Accordingly, Plaintiff alleges that the "high protein" and "protein-packed" claims on the Product labels are unlawful because they fail to comply with the protein requirements for making a protein claim as set forth in 21 C.F.R. § 101.9(c)(7)(i) and 101.13(b).

Section 101.9 regulates the information that appears in the nutrition facts panel. With respect to protein:

> (c) The declaration of nutrition information on the label and in labeling of a food shall contain information about the level of the following nutrients ...
>
> (7) "Protein": A statement of the number of grams of protein in a serving, expressed to the nearest gram.... Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food ....
>
> (i) A statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, ... expressed as Percent of Daily Value, may be placed on the label, except that such a statement shall be given if a protein claim is made for the product.... When such a declaration is provided, it should be placed on the label adjacent to the statement of grams of protein and aligned under the column headed "Percent Daily Value," and expressed to the nearest whole percent.

21 C.F.R. § 101.9(c)(7)(i). Thus, if "a protein claim is made," the corrected amount of protein per serving expressed as a PDV, "shall" appear on the nutrition facts panel. *Id.*; *see also* 21 C.F.R. 101.13(n) ("Nutrition labeling in accordance with § 101.9…shall be provided for any food which a nutrient content claim is made.").

Section 101.13 explains what a "nutrient content claim" is:

> A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in

4

> accordance with this regulation and with the applicable regulations in subpart D of this part or in part 105 or part 107 of this chapter.
>
> (1) An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., "low sodium" or "contains 100 calories."
>
> (2) An implied nutrient content claim is any claim that:
>
> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or
>
> (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat").

21 C.F.R. § 101.13(b)(1)-(2).

Section 101.54 imposes additional labeling requirements for certain nutrient content claims using the word "high":

> (b) "High" claims.
>
> (1) The terms "high," "rich in," or "excellent source of" may be used on the label and in the labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that the food contains 20 percent or more of the RDI or the DRV per reference amount customarily consumed.

21 C.F.R. § 101.54(b)(1).

Plaintiff argues that "high protein lentils" and "protein-packed" are implied nutrient content claims. MDLZ disagrees. MDLZ argues that the phrase "high protein lentils" cannot be a nutrient content claim because it does not suggest that the product contains a specific amount of protein. However, to qualify as an implied nutrient content claim, the statement must "describe[]…an ingredient [in the food] in a manner that suggests that a nutrient is absent or present in a certain amount." 21 C.F.R. 101.13(b)(2)(i). Here, the phrase "high protein lentils" suggests that lentils—an ingredient in the Product—are present in a certain amount, and it thus qualifies as an implied nutrient content claim. *See Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886, at *6 (N.D. Cal. July 13, 2015) (noting that characterizing a food as "high" in a particular nutrient qualifies as a nutrient content claim). Moreover, "high" claims are explicitly defined by FDA regulations and require a product making a "high" representation to

5

have 20% or more of the daily recommended value, a threshold Plaintiff alleges the Product fails to meet. *See* 21 C.F.R. 101.54(b).

MDLZ also contends that "protein-packed" does not qualify as an implied nutrient content claim because it does not suggest that the Product contains any specific amount of protein. Unlike "high," the term "packed" is not explicitly defined by FDA regulations. However, Plaintiff argues that synonyms of FDA-defined terms can act as nutrient content claims and form the basis of nutrient content claim causes of action. (Opp. at 3.) Plaintiff contends that "packed" is one of these synonyms and thus constitutes an implied nutrient content claim. *Id.* (citing *Vassigh*, 2015 WL 4238886, at *7 ("A defendant cannot escape liability simply because it uses a synonym…")).

In support of his argument, Plaintiff relies on several cases in which the courts determined that terms not officially defined by FDA regulations nevertheless constituted nutrient content claims. *See Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 575 (N.D. Cal. 2013) (concluding that the terms "contain" and "source of" were nutrient content claims based on FDA warning letters); *Vassigh*, 2015 WL 4238886, at *6-7 (finding the term "packed" plausibly implied a particular level of antioxidants contained in the product and constituted nutrient content claims for purposes of the motion to dismiss); *Salazar v. Honest Tea, Inc.*, No. 2:13-CV-02318-KJM-EF, 2015 WL 75223, at *5 (E.D. Cal. Jan. 6, 2015) (determining the phrase "packed with" is likely to qualify as nutrient content claim).

In *Vassigh* and *Salazar*, the courts relied on FDA warning letters in which FDA advised companies that statements characterizing their products as "packed" with antioxidants constituted nutrient content claims. *See Vassigh*, 2015 WL 423886, at *6-7; *Salazar*, 2015 WL 75223, at *4-5. MDLZ asserts that *Vassigh* and *Salazar* are distinguishable because they concerned antioxidants, and there is no indication that the FDA has taken issue with protein-packed claims like those at issue here. The Court is not persuaded by this distinction. Defendants fail to provide a meaningful argument as to why the FDA's views on "packed" in the context of antioxidants would not apply to "packed" in the context of protein claims. Indeed, as the court in *Forrett v. Gourmet Nut, Inc.*, No. 22-cv-02045-BLF, 2023 WL 3749556 (N.D. Cal. June 1, 2023), recently explained, the language in the antioxidant-specific regulation is the same as the language for

6

nutrient content claims generally. *Forrett*, 2023 WL 3749556 at *5 (comparing 21 C.F.R. § 101.54(g) *with* 21 C.F.R. § 1010.13(b) and finding that "protein packed" is a nutrient content claim that characterizes the level of protein in the food and that triggers the requirements of 21 C.F.R. § 101.9(c)(7)).

Thus, the Court concludes that Plaintiff has sufficiently alleged that the statements "high protein lentils" and "protein-packed" plausibly imply a level of protein contained in the Product and constitute nutrient content claims. The Court finds Plaintiff has plausibly alleged his claim that the "high protein" and "protein-packed" statements on the Product labels are unlawful based on the omission of the corrected amount of protein per serving. The Court DENIES the motion to dismiss on this basis.

**C. Plaintiff Has Plausibly Alleged Reliance to Support His Omission-Based Theory.**

MDLZ also argues that Plaintiff's omission-based theory fails because Plaintiff has not plausibly alleged that he relied on the omission of the PDV in concluding that the Product was a good source of protein.

To establish standing under the UCL, CLRA, or FAL, a plaintiff must allege reliance on the purported misrepresentations at issue and economic injury as a result. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th at 326-27 (2011); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022); *see also Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-cv-04402-WHO, 2014 WL 1100944, at *3 (N.D. Cal. Mar. 18, 2014) ("As with the UCL, [p]laintiffs must allege reliance on the specific marketing materials claimed to be misleading in order to establish standing to bring claims under the ... CLRA.") (internal quotation and citation omitted). "'A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging ... that he or she would not have bought the product but for the misrepresentation.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Kwikset*, 51 Cal. 4th at 330,). "[T]he reliance requirement also applies to a claim under the UCL's unlawful prong where the underlying conduct is not a misrepresentation or fraud." *See Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714, at *6 (N.D. Cal. Sept. 2, 2022) (collecting cases).

7

To demonstrate actual reliance for a fraudulent omission claim, a plaintiff must allege that "had the omitted information been disclosed, he would have been aware of it and behaved differently.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). "The standard for pleading reliance on account of an omission is low." *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019).

Here, Plaintiff alleges that "[h]e looked at and read the nutrition facts panel on the Product before purchasing them" and that had MDLZ "adequately disclosed the corrected amount of protein per serving…expressed as a %DV, as FDA regulations require, Plaintiff would not have purchased the Products." (SAC ¶ 14(d).) Plaintiff further alleges that he "regularly checks the nutrition facts panel before purchasing any product…and uses that information as a basis of comparison between similar products" and that "he prefers products that provide more of the recommended daily amount of protein." *Id*. The Court finds that Plaintiff has sufficiently alleged reliance on the omission of the PDV from the nutrition facts panel.

MDLZ argues that Plaintiff's reliance on the omission of the PDV from the nutrition facts panel is implausible because Plaintiff alleges he read the nutrition facts panel, which clarifies that the Product contains only 3 grams of protein per serving. As a result, MDLZ contends Plaintiff could not have interpreted the nutrition facts panel to mean that the chips were high protein snack regardless of whether the nutrition facts panel stated the PDV. The Court disagrees.

Plaintiff has alleged that "[w]ithout the statement of the corrected amount of protein per serving in the form of a %DV, the only clarifying information [he] had about the Products was the 3 gram protein quantity in the nutrition facts panel, and he believed he was receiving 3 grams of high-quality, complete protein…" (SAC ¶ 14(e).) The Court finds these allegations sufficient. The corrected amount of protein value serves a different purpose than the grams of protein listed on the nutrition facts panel: "[i]t gives consumers a sense of how the food might fit into their broader nutritional needs." *Rausch v. Flatout, Inc.*, --- F. Supp. 3d---, 2023 WL 2401452, at *5 (N.D. Cal. Mar. 8, 2023). Indeed, the fact that FDA requires the corrected amount of protein in certain circumstances suggests that consumers rely on this information to clarify the quality and

8

quantity of protein in a particular product. Thus, MDLZ's argument that Plaintiff's allegations of reliance are implausible because his review of the nutrition facts panel would have revealed that the chips contain only 3 grams of protein per serving is unpersuasive.

The Court concludes Plaintiff's allegations of reliance are plausible.

**D.      Whether the Label Statements are Misleading and Deceptive.**

Plaintiff alleges that the protein claims on the front and back label are deceptive under two theories: (1) the statements are misleading because of the omission of the PDV in the nutrition facts panel; and (2) the statements in and of themselves are misleading because the Product fails to provide sufficient levels of protein to meet this representation (*see* SAC ¶¶ 48-52).

      **1.      Whether the statements are misleading based on the omission of the PDV in the nutrition facts panel.**

MDLZ argues that the omission of the PDV in the nutrition facts panel does not render either "high protein" or "protein-packed" independently deceptive or misleading. MDLZ asserts that because these claims are not quantitative claims, like "15g Protein," the claims do not promise consumers a specific amount of protein. Thus, the omission of the "corrected amount of protein" has no bearing on the amount of protein a consumer would expect to receive from the chips.

MDLZ relies on *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806 (N.D. Cal. 2022). In that case, the court noted that the corrected amount of protein exists "not to remedy an otherwise misleading figure, but to supply protein-conscious consumers with information that gives them further assistance in deciding what to buy." *Nacarino*, 584 F. Supp. 3d at 810. Plaintiff points out that subsequently, in *Rausch*, Judge Chhabria stated that portion of the analysis in *Nacarino* was wrong, explaining that "the FDA's regulations are best understood as reflecting a determination that when a manufacturer emphasizes a product's protein content, that statement is misleading without including information about the product's protein quality on the nutrition facts panel." *Rausch*, 2023 WL 2401452, at *5.

MDLZ argues that *Rausch* is distinguishable because it involved a product making a quantitative nutrient content claim on the label without disclosing the corrected amount of protein in the NFP. *See id.*, at *2. MDLZ contends that here, in contrast, the Product's label does not

9

promise a specific amount of protein and thus, there is not quantitative protein claim at issue. The Court finds MDLZ's argument unpersuasive. The court's analysis in *Rausch* was not limited to purely quantitative protein claims. Indeed, although that case involved a quantitative protein claim, the *Rausch* decision contemplates that protein claims like those at issue here would also be misleading. *See Rausch*, 2023 WL 2401452, at *1 (noting that "if a product makes a 'protein claim' anywhere else on its label—for instance, "Excellent source of protein!" or even just "20g of protein"—the FDA requires the manufacturer to include additional information on the nutrition facts panel"); *id.*, at *2 (stating that "expectations created by statements like "excellent source of protein!" or "20g protein!" can be tempered by looking at the percent daily value").

Here, Plaintiff has alleged that the label included protein content claims and failed to include the corrected amount of protein expressed as a PDV in the nutrition facts panel. Plaintiff further alleges that had MDLZ included the statement of corrected amount of protein, consumers would have understood that the "Product[] provide[s] significantly less of the daily value of protein than high quality protein products with comparable protein quantities." (SAC ¶ 83.) At this stage, Plaintiff's allegations are sufficient to allege that the omission of the PDV rendered the protein claims misleading. *Lesh v. DS Nats., LLC*, No. 22-cv-01036-HSG, 2023 WL 2530986, at *5 (N.D. Cal. Mar. 15, 2023) (finding that the plaintiff plausibly alleged that the defendant's labels could deceive a reasonable consumer where the plaintiff alleged that the labels, which made protein content claims on the front without the PDV in the nutrition facts panel, masked that the products contained "low quality" protein).

The Court also notes that MDLZ's argument appears to challenge Plaintiff's omission claim on the basis that the omission is not contrary to a representation actually made. That is, because "protein-packed" and "high protein lentils" do not promise a specific amount of protein, the omission of the PDV cannot be contrary to either statement. However, a claim for fraud by omission can also be based on a duty to disclose. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F. 3d 857, 861 (9th Cir. 2018)). Plaintiff contends that his omission claim can succeed under either scenario. MDLZ does not address the viability of the omission claim based on a duty to disclose, but the Court concludes

10

that at this stage, Plaintiff has adequately alleged that MDLZ was obligated to disclose the PDV protein, that the omission was material, and that MDLZ had exclusive knowledge of Product's PDV. *See Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (outlining the requirements for an omission-based claim premised on a duty to disclose).

### 2. Whether the statements are misleading.

Although the allegations of the SAC have shifted to focus on Plaintiff's omission-based theory, Plaintiff continues to allege that the phrase "high protein lentils" and "protein-packed" standing alone are misleading to the reasonable consumer. The Court previously determined that neither phrase standing alone would mislead a reasonable consumer into believe that the Product was a high protein food. However, the Court concludes, upon review of the allegations of the SAC, that Plaintiff has plausibly alleged that these claims would mislead a reasonable consumer.

With regard to "high protein lentils," Plaintiff again alleges that a reasonable consumer would understand the phrase "high protein lentils" to mean that the Product contains enough protein to qualify for a "high protein" claim under 21 C.F.R. § 101.54. The Court previously determined that the phrase "high protein lentils" would not mislead the reasonable consumer because, when viewed in the context of the packaging, it was implausible that a reasonable consumer would understand the phrase to refer to the amount of protein in the chips.

Upon reviewing the allegations of the SAC, the Court finds occasion to revisit its earlier conclusion as to the alleged deceptiveness of the phrase "high protein lentils." Plaintiff has plausibly alleged that consumers would understand the phrase "high protein lentils" to mean that the chips contain enough protein to qualify for a "high protein" claim under 21 C.F.R. § 101.54 and that a consumer's belief about the meaning of high protein is consistent with these regulations. Moreover, although it is true that the phrase "high protein" never appears in isolation and is used to describe lentils and lentil flour, these are lentil chips, and, as Plaintiff notes, it is plausible that a reasonable consumer viewing the statement would understand "claims concerning the Product's chief ingredient reasonably flow to the Product as well." (Opp. at 2.) Further, Plaintiff now alleges that lentils themselves are an incomplete source of protein and provide nutritionally less protein than other sources. The phrase "high protein lentils" with an arrow pointing to the chips

11

could add to the overall impression that the Product itself is a good source of protein. The Court cannot say as a matter of law at this stage that Plaintiff's interpretation of the phrase "high protein lentils" is implausible. The Court thus concludes that Plaintiff has plausibly alleged his claims based on the alleged deceptiveness of the "high protein lentils" phrase on the front of the package.

Plaintiff also renews his claim that the "protein packed" language standing alone would mislead a reasonable consumer. The Court previously determined that the "protein-packed" language was not affirmatively misleading to a reasonable consumer because it was non-actionable puffery. (*See* 1/4/2023 Order at 5-6.) Specifically, the Court stated that "'[p]acked' is not a specific and measurable claim that is capable of being proved false or of being reasonably interpreted as statement of objective fact." *Id.* However, as discussed above, the Court has now determined that Plaintiff has plausibly alleged that "protein-packed" is an implied nutrient content claim that implies a level of protein contained in the Product similar to that of FDA-regulated terms. Thus, Plaintiff's reliance on the FDA regulations provides an objective benchmark that supports the plausibility of Plaintiff's allegations that the phrase "protein-packed" means that the Product is a good source of protein. As such, the Court concludes Plaintiff has plausibly alleged that "protein-packed" is an actionable misrepresentation.

The Court, in its prior order, also stated that any consumer confusion resulting from the "protein-packed" claim could be remedied by the nutrition facts panel, which states that Product contains 3 grams of protein per serving. In reaching that conclusion, the Court rejected Plaintiff's reliance on *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), "which stands for the proposition that if the defendant commits an action of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." (1/4/2023 Order at 8 (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016)). However, in light of the Court's conclusion here that Plaintiff has sufficiently alleged that "protein-packed" is an affirmative misrepresentation, *Williams* controls, and Plaintiff cannot be expected to review the nutrition facts panel to clear up confusion about the protein content in the Product.

Thus, the Court concludes that the FAC plausibly states that the challenged statements, "protein-packed" and "high protein lentils" would mislead a reasonable consumer into believing

12

that the Product is a good source of protein. In so concluding, the Court is mindful that whether a statement is misleading "will usually be a question of fact not appropriate for decision [on a motion to dismiss]." *Williams*, 552 F.3d at 938.

However, the Court is not persuaded by Plaintiff's allegations that the statements "better-for-you" and "one of the best sources of plant-based protein" would mislead a reasonable consumer. Plaintiff has not sufficiently alleged that these claims are actionable misrepresentations rather than puffery, explained how these claims are misleading, or alleged reliance on these statements. Thus, the Court dismisses Plaintiff's claims to the extent they are premised on these challenged label statements.

### E. Plaintiff's Remaining Claims May Proceed.

MDLZ argues that the viability of Plaintiff's remaining claims is tied to the success of his claims of consumer deception. Because the Court concludes that Plaintiff has plausibly alleged his claims of consumer deception, the remaining claims, which are based on the same representations as the consumer fraud claim, may proceed. The Court DENIES the motion to dismiss these claims.

### CONCLUSION

For the foregoing reasons, the Court GRANTS MDLZ's motion with respect to the claims "better for you" and "one of the best sources," and it DENIES the motion in all other respects.

The parties are FURTHER ORDERED to appear for case management conference on October 13, 2023. The parties shall file a joint case management statement by no later than October 6, 2023.

**IT IS SO ORDERED.**

Dated: September 6, 2023

JEFFREY S. WHITE
United States District Judge

13