1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8               NORTHERN DISTRICT OF CALIFORNIA
9

10   JOHN FORRETT,
                                            Case No. 22-cv-02048-NC
11              Plaintiff,
                                            **ORDER GRANTING IN PART AND
12         v.                               DENYING IN PART DEFENDANT'S
                                            MOTION TO DISMISS**
13   WEST THOMAS PARTNERS LLC,
                                            Re: ECF 48, 53
14              Defendant.

15

16         This putative class action is about the protein content and corresponding labeling of

17   Defendant West Thomas Partners' Gluten Free Bites (Products).  Plaintiff John Forrett

18   alleges West violates California law by not including specific information on the Products'

19   back panels.  Forrett also alleges the front label misleads and deceives customers about the

20   quantity and usability of the protein in the Products.  West argues federal law preempts

21   these claims.  Under recent Ninth Circuit precedent, Forrett's claims are not preempted to

22   the extent they are premised on violations of state law that itself is identical to federal law.

23   West's motion to dismiss those claims is DENIED.  Conversely, Forrett's remaining

24   consumer law claims are preempted and DISMISSED without leave to amend.

25   **I.      BACKGROUND**

26       **A.    Factual History**

27         West markets and sells GFB Gluten Free Bites.  ECF 47 (SAC) ¶ 1.  The Products

28   come in a variety of flavors.  *Id.*  They include the terms "PROTEIN PACKED" and "4G

PLANT PROTEIN" on their front labels. *Id.* ¶ 3. The back panels list the number of grams of protein but do not give a corresponding percent daily value. *Id.* ¶ 7.

 

The primary protein sources in the Products are brown rice protein and pea protein. *Id.* Forrett alleges these are low quality, incomplete proteins. *Id.* ¶¶ 11, 29.

### B. Procedural History

The Court previously dismissed Forrett's first amended complaint with leave to amend. ECF 40. Forrett filed a second amended complaint on May 1, 2023. SAC. He brings a class action on behalf of California and Nationwide classes. *Id.* ¶ 102. West moved to dismiss. ECF 48. Forrett opposed the motion. ECF 53.

As new caselaw developed in this area, the Court requested supplement briefing. *See* ECF 59, 77. The parties briefed the relevance of two Ninth Circuit cases, *Nacarino v. Kashi Co.*, 77 F.4th 1201 (9th Cir. 2023), ECF 60, 63, and *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842 (9th Cir. 2024), ECF 79, 80.

Both parties consented to magistrate judge jurisdiction. ECF 4, 14.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

When alleging fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The plaintiff must plead 'the who, what, when, where, and how of the misconduct charged.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).

## III.    DISCUSSION

Forrett brings claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumer Legal Remedies Act (CLRA), as well as a claim for unjust enrichment. Though brought as one claim, Forrett's UCL claim relies on two types of conduct: (1) violations of the FAL and CLRA and (2) violations of California's Sherman Law. *See* SAC ¶ 114. The Sherman law is "California's analog to the federal Food Drug and Cosmetic Act (FDCA)" and "incorporates by reference all federal food

3

labeling standards." *Davidson*, 106 F.4th at 844; Cal. Health & Safety Code § 110100(a).
For clarity, this Order refers to Forrett's UCL claim premised on Sherman Law violations
as his "Sherman Law claim."[1] *See Davidson*, 106 F.4th at 845 ("For consistency, because
the Davidsons' Unfair Competition Law claim is premised on alleged violations of the
Sherman Law, we refer to the Davidsons' claim as the 'Sherman Law claim.'").

Whether this case survives hinges on preemption. Applying recent Ninth Circuit
guidance, Forrett's Sherman Law claim is not preempted because it aligns with federal
food labeling requirements. Forrett's Sherman Law claim also survives West's arguments
on the reasonable consumer standard and heightened pleading standard for fraud.
Conversely, the remainder of Forrett's consumer law claims are preempted. Lastly,
because Forrett's Sherman Law claim survives, so does his unjust enrichment claim.

### A.    Forrett's Claim Premised on the Sherman Law is Not Preempted.

West contends Forrett's claims are expressly and impliedly preempted. Under the
Constitution's Supremacy Clause, Congress may "pre-empt, *i.e.*, invalidate, a state law
through federal legislation." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015).
Express preemption occurs "through express language in a statute." *Id.* "Congress enacts
a statute that expressly commands that state law on the particular subject is displaced."
*Gadda v. Ashcroft*, 377 F.3d 934, 944 (9th Cir. 2004). Implied preemption applies where
"federal law occupies a 'field' of regulation so comprehensively that it has left no room for
supplementary state legislation" or "where compliance with both state and federal law is
impossible." *New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic
Ass'n*, 584 U.S. 453, 479 (2018) (describing field preemption); *Oneok*, 575 U.S. at 376
(describing conflict preemption).

### 1.    Forrett's Sherman Law Claim is Not Expressly Preempted.

Under *Nacarino*, Forrett's Sherman Law claim is not expressly preempted because

---

[1] Admittedly, these semantics are confusing because Forrett does not allege any Sherman
Law claims. *See* SAC ¶ 60. Neither did the *Davidson* plaintiffs. Here, as in *Davidson*, the
Court uses "the Sherman Law claim" to reduce confusion. *See Davidson*, 106 F.4th at 845
(applying description "[f]or consistency").

United States District Court
Northern District of California

1    it alleges violations of a state law that imposes the same requirements as the FDCA. *See*

2    77 F.4th at 1204. Understanding *Nacarino* and how it applies here requires some

3    background on the FDCA requirements.

### a. Federal Food Labeling Requirements.

5    "The FDCA expressly preempts all state statutes and law that 'directly or indirectly

6    establish any requirement for the labeling of food that is not identical to the federal

7    requirements' set forth by statute and Food and Drug Administration (FDA) regulations."

8    *Nacarino*, 77 F.4th at 1204 (quoting 21 U.S.C. § 343-1(a)(5)). In this context, "[t]he

9    preemption analysis turns on whether the challenged statements are authorized by the

10   FDA's regulations or other pronouncements of similar legal effect." *Id.* (quoting *Reid v.*

11   *Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015)). In short, "any state labeling

12   requirements that differ from federal requirements are preempted . . . ." *Id.* at 1203. On

13   the other hand, state-law claims seeking to impose identical requirements to those

14   prescribed by federal law are not preempted. *See id.* at 1204.

15   *Nacarino* provides a thorough "background on the nature of protein and federal

16   nutrition-labeling regulations," including "the now-ubiquitous Nutrition Facts Panels

17   (NFPs)." *Id.* NFPs "disclose the number of calories and the amount of fat, carbohydrates,

18   and protein in their products." *Id.* at 1205. They usually appear on the side or back panel

19   of a product. *Id.* "When manufacturers make a claim outside the NFP that describes the

20   amount of one of the nutrients required to be included in the NFP, FDA regulations refer to

21   the statement as a 'nutrient content claim,' or, if the statement describes protein, a 'protein

22   claim.'" *Id.* (citing 21 C.F.R. §§ 101.13(b), 101.9(c)(7)(i)). "[I]f a label includes a protein

23   claim (by definition, a claim outside the NFP), it triggers a provision . . . that requires the

24   manufacturer to display [a corrected] protein content as a percent daily value figure

25   [PDV]." *Id.* (citing § 101.9(c)(7)(i)). That corrected number is based on the protein's

26   PDCAAS, the "protein digestibility-corrected amino acid score," which measures protein

27   quality. *Id.*

28   Confused yet? If your cereal has "20g Protein" on its front label, its NFP needs to

United States District Court
Northern District of California

5

1    list not only 20 grams of protein, but also the PDV that protein represents.  *See Nacarino*,

2    77 F.4th at 1206 (illustrating with graphics).  For example, "Protein 20g, 40%" for a high-

3    quality protein or "Protein 20g, 30%" for a lower quality protein.  *See id.*  The first means,

4    "These 20 grams of protein meet 40% of the recommended daily intake."  The second

5    means the same quantity of protein meets 30% of the recommended daily intake.

### b.    *Nacarino* and Express Preemption.

7    *Nacarino* addressed two putative class actions bringing California consumer

8    protection claims.  "Both complaints alleged that the front labels on several of Defendants'

9    products are 'false and misleading' under state and federal law."  *Nacarino*, 77 F.4th at

10    1203.  The plaintiffs alleged the products "overstate the products' protein content and

11    imply that all of the protein contained in the products is usable by the human body."  *Id.* at

12    1207.  The front labels of the products included claims like "11g Protein" or "PROTEIN

13    15g."  *Id.* at 1205.  The complaints did not allege that the products failed to "include the

14    required percent daily value figure in the NFP as required by the trigger provision."  *Id.* at

15    1212.  The lower court dismissed both cases as preempted by the FDCA.  *Id.* at 1203.

16    As a threshold matter, the *Nacarino* court found "[t]he challenged claims . . . are

17    protein claims because they appear outside the NFP and characterize the amount of protein

18    in the products," thus triggering the PDV provision.  *See id.* at 1205.  The court then

19    "clarif[ied] that a protein claim *could be* misleading within the meaning of the applicable

20    food labeling regulations"—and thus not preempted as part of a state-law claim—"if the

21    NFP does not disclose the product's protein quality *and* the product contains lower-quality

22    protein."  *Id.* at 1207 (emphasis in original).  But the *Nacarino* complaints failed to make

23    those allegations.  *Id.* at 1211–12.  They did not allege a failure to "include the required

24    percent daily value figure in the NFP as required by the trigger provision."  *Id.*  Thus, the

25    court upheld the preemption determination because the alleged violations were not

26    "misleading within the meaning of the federal regulations."  *Id.* at 1212.

### c.    Under *Nacarino*, Forrett's Sherman Law Claim Survives.

28    Forrett, in comparison, alleges West failed to "include the required percent daily

United States District Court
Northern District of California

value figure in the NFP." *See Nacarino*, 77 F.4th at 1211–12.  As in *Nacarino*, the "4G

Plant Protein" on the product's front label is a protein claim because it "appear[s] outside

the NFP and characterize[s] the amount of protein in the products."  *See id.* at 1205.  Thus,

the NFP trigger provision applies.  *See id.*

Forrett alleges West did not satisfy the trigger provision.  *See* SAC ¶¶ 30, 64–66.

According to *Nacarino*, plaintiffs can survive preemption if they alleged "(1) the NFP does

not disclose the product's protein quality and (2) the product contains lower-quality

protein."  *See Nacarino*, 77 F.4th at 1207.  First, Forrett alleges that while the NFP

includes the number of grams of protein, it does not include the adjusted PDV.  SAC ¶ 7.

Second, Forrett alleges the pea and brown rice proteins included in the products are lower-

quality proteins.  *Id.* ¶¶ 11, 29.  Unlike *Nacarino,* where the parties failed to allege "that

the challenged protein claims are misleading within the meaning of the federal

regulations," Forrett has met that burden.  *See Nacarino*, 77 F.4th at 1212.  Therefore,

Forrett's Sherman Law claim is not preempted.  *See id.*

West suggests preemption still applies because the Products meet an exemption to

the trigger provision.  West argues federal regulations permit products to overstate protein

amounts by 20%.  ECF 79 at 4 (citing 21 C.F.R. Section 101.9(g)(4)(ii)).  To support this

argument, West points to Forrett's statement that "the amount [of protein in the Products]

will be approximately 20% less . . . ." SAC ¶ 30.  According to West, Forrett's

approximation exempts the Products from back panel reporting.  Not so.  As this case

proceeds West may present evidence that the Products meet this exemption.  But at this

stage, it cannot rely on West's approximation as proof.  *See* Fed. R. Civ. P. 12(b)(6).

Thus, unlike the plaintiffs in *Nacarino*, Forrett's Sherman Law claim "alleges that

the Nutrition Facts Panels on Defendants' product labels omitted the required protein

quality-adjusted percent daily value information."  *See Nacarino*, 77 F.4th at 1203.

Accordingly, Forrett's Sherman Law claim is not preempted.  *See id.*

### 2.  Forrett's Sherman Law Claim is Not Impliedly Preempted.

Alternatively, West argues Forrett's claims are impliedly preempted.  This

United States District Court
Northern District of California

argument also fails on Forrett's Sherman Law claim.

Not long after *Nacarino*, the Ninth Circuit addressed FDCA implied preemption in *Davidson*. 106 F.4th 842. *Davidson* examined "whether the FDCA provision, granting the federal government virtually exclusive authority to enforce the federal law, preempts private enforcement of California's Sherman Law, even though the FDCA does not preempt the Sherman Law itself." *Id.* at 847. The allegations in *Davidson* also concerned protein claims but in a different context: baby food. *Id.* at 846. Federal regulations and by extension the Sherman Law prohibit "nutrient content claims . . . on food intended for use by infants and children less than 2 years of age." *See* 21 C.F.R. § 101.13(b)(3). The *Davidson* plaintiffs alleged Defendants violated this regulation by including nutrient claims on its label. *Davidson*, 106 F.4th at 846. The plaintiffs brought UCL claims premised on "alleg[ations] the pouch labels violate the Sherman Law." *Id.* at 844. The lower court had dismissed the claims as preempted "because the Sherman Law is derived from the FDCA, and the federal law calls for federal government enforcement." *Id.* at 845.

On appeal, the *Davidson* court, in accord with *Nacarino*, reiterated that "the Sherman Law incorporates all the federal food labeling requirements, [] is 'identical' to federal standards and not expressly preempted." *See Davidson*, 106 F.4th at 848. It then asked whether "Congress impliedly preempted private enforcement of the state [Sherman Law] standards . . . ." *See id.* The court pointed out that "the FDCA did not even purport to limit enforcement of such parallel state laws in any way." *Id.* at 848. The court distinguished between cases "concluding that a state law claim premised on violation of FDCA duties was impliedly preempted," and those concluding "that the FDCA does not preempt claims for violations of parallel state law duties." *Id.* at 849–50. Relying on multiple precedential cases, the court concluded that "violations of parallel state law duties, not the violation of duties owed under federal law" were not preempted. *Id.* at 849–50 (discussing *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996); *Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013); *Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020)). Because the Davidson "plaintiffs [claimed] violations of California law, the

1    Sherman Law, not the federal FDCA" and "the FDCA places no limitations on

2    enforcement of these state parallels" their claims were not impliedly preempted.  *Id.*

3        Neither is Forrett's.  In his complaint, Forrett disclaimed federal causes of action:

4    "Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and

5    regulations promulgated thereunder by the FDA.  Plaintiff relies on the FDCA and FDA

6    regulations only to the extent such laws and regulations have been separately enacted as

7    state law or regulation or provide a predicate basis of liability under the state and common

8    laws cited in the following causes of action."  SAC pp. 32–33.  Forrett consistently refers

9    to how the Products violate California's Sherman Law, not the FDCA.  *See* SAC ¶¶ 75–77,

10   114, 117.  To the extent Forrett cites federal law or regulations, he does so when they are

11   "incorporated by reference in the Sherman Law."  *See, e.g.*, SAC ¶77.  Thus, like

12   *Davidson*, Forrett claims "violations of California law, the Sherman Law, not the federal

13   FDCA."  *See Davidson*, 106 F.4th at 850.  And such claims are not preempted.  *See id.*

14       **B.    Forrett's Sherman Law Claim Survives Applicable Pleading Standards.**

15       West presents two additional arguments for dismissal: (1) no reasonable consumer

16   would be misled by the Products' missing protein PDV and (2) Forrett does not meet the

17   heightened pleading standard for fraud.  Forrett's Sherman Law claim survives both.

18           **1.    The Sherman Law Claim Meets the Reasonable Consumer Standard.**

19       Violations of the UCL "are evaluated from the vantage point of a 'reasonable

20   consumer.'"  *Reid*, 780 F.3d at 958.  "Under that test, a plaintiff must show that members

21   of the public are likely to be deceived."  *Id.* (quotation marks omitted).  Plaintiffs "must

22   allege that the packaging will deceive many consumers, not just that a few might be

23   deceived."  *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024).  The

24   reasonable consumer standard "raises questions of fact that are appropriate for resolution

25   on a motion to dismiss only in rare situations."  *Reid*, 780 F.3d at 958 (quotation marks and

26   brackets omitted).

27       Omissions may deceive a reasonable consumer.  *See Hodsdon v. Mars, Inc.*, 891

28   F.3d 857, 861 (9th Cir. 2018).  "[T]o be actionable the omission must be contrary to a

representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*." *Id.* (emphasis in original) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 835 (2006)).

Here, Forrett sufficiently alleges West had a duty to disclose the Products' protein PDV on the NFP and omitted that fact. *Cf. Hodsdon*, 891 F.3d at 868 ("Plaintiff's [California consumer law] claims fail because a failure to disclose a fact one has no affirmative duty to disclose is not likely to deceive anyone." (internal quotation marks and brackets omitted)). If, as Forrett alleges, the Products contain lower quality protein, that omission is likely to deceive a reasonable consumer because the consumer lacks context to evaluate the Products' front label claims. Accordingly, Forrett meets the reasonable consumer standard at this stage. *See id.*

### 2. Forrett Pleads His Sherman Law Claim with Sufficient Particularity.

"When a plaintiff brings fraud or misrepresentation claims, 'Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Whiteside*, 108 F.4th at 785 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). "The plaintiff must plead the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted). Rule 9(b) applies to UCL claims. *Kearns*, 567 F.3d at 1125.

Forrett pleads his Sherman Law claim with sufficient particularity. Forrett claims he purchased (who) West's (what) Dark Chococate + Peanut Butter Gluten Free Bites from (where) a CVS Store located in San Jose, CA in (when) May 2020. SAC ¶ 88. Forrett alleges (how) he was deceived by the absence of a protein PDV because he would not have purchased or would have paid less for the Products had a PDV indicated lower quality protein. *Id.* ¶ 90. West includes images of the Products, which show that a protein PDV was not included in the NFP. *Id.* ¶ 25. These allegations "give [West] notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Whiteside*, 108 F.4th at 785.

United States District Court
Northern District of California

**C.    Forrett's Remaining Claims Are Expressly Preempted Under *Nacarino*.**

The remainder of Forrett's consumer law claims, under the FAL, CLRA, and UCL, are preempted under *Nacarino*. Like *Nacarino*, those claims allege the Products "overstate the products' protein content and imply that all of the protein contained in the products is usable by the human body." *See Nacarino*, 77 F.4th at 1207; SAC ¶ 99 ("Plaintiff and the Class Members paid for Products that contained less usable protein than represented on the Product's packaging.")  As the *Nacarino* court said, "If Plaintiffs believe that a reasonable consumer would assume that all proteins are created equal, and that any products marketed as containing a certain quantity of protein provide identical protein-based health benefits, they are free to urge the FDA to amend the regulations or to challenge the agency's rules as inconsistent with its statutory mandate." *See Nacarino*, 77 F.4th at 1214. Because Forrett's FAL and CLRA claims, and his UCL claim not premised on Sherman Law violations, allege these same ills, the FDCA preempts them. *See id.*

**1.    Forrett's Claim for Injunctive Relief Falls with his CLRA Claim.**

Forrett also seeks injunctive relief as part of his CLRA claim. SAC ¶ 154. Because his CLRA claim is preempted, *see Nacarino*, 77 F.4th at 1214, his claim for injunctive relief also fails.

**D.    Forrett's Unjust Enrichment Claim Survives.**

*Davidson* also briefly addressed whether an unjust enrichment claim survives along with a Sherman Law claim, concluding that it did. *See Davidson*, 106 F.4th at 853. Accordingly, because Forrett's Sherman Law claim survives and there is an "underlying basis for recovery," Forrett's unjust enrichment claim may proceed. *See id.*

## IV.    CONCLUSION

West's motion to dismiss Forrett's UCL claim to the extent it alleges violations of California's Sherman Law is DENIED. West's motion to dismiss Forrett's FAL, CLRA, and the remainder of his UCL claim is GRANTED, including on Forrett's claim for injunctive relief. Because amendment of those claims would be futile, they are dismissed without leave to amend. West's motion to dismiss Forrett's unjust enrichment claim is

also DENIED.

**IT IS SO ORDERED.**

Dated:  August 26, 2024

NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California